Robert Emory Maxwell, Jr., appeals the summary judgment entered by the Colbert Circuit Court in favor of his half sister, Dollye Diane Dawkins, in a will contest involving the estate of their deceased father, Robert Maxwell, Sr. ("Dr. Maxwell"). We affirm.
 I.
Dr. Maxwell died on August 29, 2004, after a long battle with chronic obstructive pulmonary disease ("COPD"). Since January 2002, Dr. Maxwell's son, Robert, had lived with him and helped him manage his affairs. Dr. Maxwell executed a power of attorney in favor of Robert in February 2002, and, in September 2002, Dr. Maxwell executed a will leaving his entire estate to his son.
In the weeks before he died, Dr. Maxwell became dissatisfied with the manner in which Robert was managing his financial affairs. In August 2004, Dr. Maxwell told Kathy Donaldson, a social worker who visited him on a monthly basis, that he wanted to revoke the power of attorney he had granted his son. In response, Donaldson gave Dr. Maxwell the telephone number of a local attorney, John McKelvey.
According to McKelvey's deposition testimony, which was undisputed, Dr. Maxwell telephoned him and scheduled a meeting at Dr. Maxwell's home to be held on August 25, 2004. McKelvey brought a written revocation of power of attorney to the meeting, and Dr. Maxwell executed the revocation after discussing it with McKelvey. According to McKelvey, after further discussion, Dr. Maxwell stated that he also wanted to revoke his September 2002 will and have a new one drafted. McKelvey said that in accordance with Dr. Maxwell's wishes he wrote across the top of the September 2002 will the following: "I hereby revoke this last will and testament this 25th day of August 2004." Dr. Maxwell signed his name below the statement McKelvey had written. However, Dr. Maxwell did not execute a new will at that time, because he stated that he needed to talk to Robert before doing so. Dr. Maxwell died four days later, without having executed a new will. *Page 284 
On February 3, 2005, Robert petitioned the Colbert County Probate Court to probate his father's September 2002 will. Robert's half sister Dawkins, Dr. Maxwell's only other heir, contested the validity of the will, arguing that it had been revoked. On Dawkins's motion, the matter was transferred to the Colbert Circuit Court. On June 2, 2005, Dawkins moved for a summary judgment. On September 27, 2005, Robert filed his response in opposition to Dawkins's summary-judgment motion, as well as his own motion for a summary judgment. In both his motion and his opposition to Dawkins's motion he argued that his father's attempt to revoke the September 2002 will had been without effect because, Robert claimed, the attempted revocation did not comply with § 43-8-136(b), Ala. Code 1975, the statutory procedure for revoking a will.
Dawkins subsequently filed a response opposing Robert's motion for a summary judgment, and, on November 22, 2005, Robert filed a reply to that response, in which he again argued that his father had not complied with § 43-8-136(b) in revoking the will and that the September 2002 will therefore remained valid. On April 20, 2006, the trial court entered an order holding that Dr. Maxwell had properly revoked his September 2002 will and granting Dawkins's motion for a summary judgment. The trial court did not, at that time, expressly rule on Robert's summary-judgment motion, and, on April 21, 2006, Robert moved the court to reconsider its order and/or to make its judgment final. In his motion for reconsideration, Robert raised for the first time the issue whether his father had, on August 25, 2004, the mental capacity to revoke his will.
On June 9, 2006, the trial court amended its earlier judgment to specifically state that Dr. Maxwell had the mental capacity to revoke his will on August 25, 2004. On June 12, 2006, the trial court entered an order denying Robert's motion for a summary judgment. Specifically, the trial court held that "the act of the testator by signing his name beneath the words written by his attorney was legally sufficient under [§43-8-136(b)] to revoke the will" and that "the testator at the time of the act of signing beneath the words of revocation possessed sufficient capacity to revoke his will." Robert appeals.
 II. "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Blue Cross Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53
(Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce `substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12."
Dow v. Alabama Democratic Party,897 So.2d 1035, 1038-39 (Ala. 2004).
 III. Section 43-8-136(b), Ala. Code 1975, states: *Page 285 
 "A will is revoked by being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another in his presence by his consent and direction. If the physical act is by someone other than the testator, consent and direction of the testator must be proved by at least two witnesses."
Robert argues on appeal that Dr. Maxwell's attempt to revoke the will was of no effect because, Robert claims, the physical act of revocation — writing the sentence "I hereby revoke this last will and testament this 25th day of August 2004" — was done by McKelvey, not by the testator Dr. Maxwell, and Dr. Maxwell's consent and direction to the act were not observed by at least two witnesses who can confirm that McKelvey acted with Dr. Maxwell's consent and at his direction. Dawkins argues that Dr. Maxwell did himself perform the physical act of revoking the will by signing his name beneath the declaration written by McKelvey; therefore, she argues, the requirement that there be two witnesses was not invoked. We agree.
In support of his argument, Robert relies on Franklin v.Bogue, 245 Ala. 379, 383, 17 So.2d 405, 408-09 (1944), in which this Court stated:
 "It is established in this jurisdiction that a will may be revoked by cancellation or obliteration, and the words `annulled' and `Void' written on the face of the will in the handwriting of the testator, with the intention at the time of the writing the same to revoke the will, is a sufficient revocation under [the statute]."
Robert seizes on the phrase "in the handwriting of the testator" and argues that Franklin accordingly stands for the proposition that in order to cancel a will without implicating the two-witnesses requirement, the testator must personally write the words of cancelation with his own hand. However, the Court's holding in Franklin cannot be extended that far. At most, it stands for the proposition that a testator who handwrites words of cancelation, such as "annulled" or "void," on his will with the intent to revoke that will has met the statutory requirements for doing so. It doesnot stand for the proposition that the testator's handwriting words of cancelation on a will is the only
way to cancel that will. Such a proposition would restrict §43-8-136(b) beyond its terms and would be beyond this Court's power and authority.
In fact, § 43-8-136(b) does not require a testator to write anything at all to revoke his will, much less to write words in his own hand. Under the unambiguous terms of the statute, a testator may also revoke a will by burning, tearing, obliterating, or destroying the will with the intent to revoke it. The operative requirements of § 43-8-136(b) are only 1) that one of the enumerated physical acts (burning, tearing, canceling, obliterating, or destroying) be performed 2) with the intent that that act revoke the will. Board of Trs. of Univ.of Alabama v. Calhoun, 514 So.2d 895, 897 (Ala. 1987). In the present case, although McKelvey wrote the phrase "I hereby revoke this last will and testament this 25th day of August 2004" on the September 2002 will, Dr. Maxwell subsequently performed the physical act of signing his name beneath the sentence, thereby signifying his agreement with it and giving it effect. The combination of the revocation language plus the "physical act" of Dr. Maxwell's affixing his own signature constituted a cancelation of the will under §43-8-136(b), and the undisputed testimony of McKelvey noted above, combined with Dr. Maxwell's signature, establishes an intent to revoke the will. Because there was both a physical act and an intent, the revocation was valid under §43-8-136(b). *Page 286 
Moreover, because Dr. Maxwell personally performed the physical act, there was no requirement that the revocation be observed by two witnesses to be valid.
 IV.
Robert also argues that Dr. Maxwell did not have sufficient mental capacity to revoke his will on the date he purported to do so. Dawkins argues that Robert did not articulate this argument in his summary-judgment motion, in his response opposing Dawkins's summary-judgment motion, or in his reply to Dawkins's response to his summary-judgment motion. Therefore, she argues, Robert waived the issue and cannot raise it on appeal.
It is true that Robert did not raise the issue of his father's mental capacity to revoke his will until he filed his motion for reconsideration after the trial court had granted Dawkins's motion for a summary judgment. Accordingly, the trial court was under no obligation to consider the issue because it was not timely raised. However, although there was no requirement that it do so, the trial court nevertheless did have the discretion to consider the argument, and it appears to have done so. SeeGreen Tree Acceptance, Inc. v. Blalock,525 So.2d 1366, 1369 (Ala. 1988) ("[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so."). In its June 9, 2006, order, entered approximately seven weeks after Robert filed his motion for reconsideration, the trial court amended its earlier order to state specifically that Dr. Maxwell had the mental capacity to revoke his will on August 25, 2004. Thus, the trial court ruled on the issue of Dr. Maxwell's mental capacity, and Robert may challenge that ruling on appeal notwithstanding his failure to raise it before the trial court entered its judgment. This holding is consistent with our rule that "our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410
(Ala. 1992) (citing Rodriguez-Ramos v. J. Thomas Williams,Jr., M.D., P.C., 580 So.2d 1326 (Ala. 1991)).
A party challenging a testator's testamentary capacity must show either 1) that the testator suffered from a permanent mental impairment before executing or revoking the will in question, or 2) that the testator was temporarily incapacitated at the time he executed or revoked the will in question, although he might have regained capacity at a later time.Fletcher v. DeLoaeh, 360 So.2d 316, 318 (Ala. 1978). It is not clear from Robert's argument whether he is claiming that Dr. Maxwell was permanently impaired or merely temporarily incapacitated when he signed the revocation language written by his attorney; regardless, Robert has failed to put forth evidence that would support either theory.
In his brief, Robert makes the following argument in regard to Dr. Maxwell's mental capacity at the time he purported to revoke the September 2002 will:
 "It has long been the law of this State that the question of whether or not a testator possessed testamentary capacity is an issue to be submitted to the jury. Miller v. Whittington, 80 So. 499, 502 (Ala. 1918); Case v. English, 52 So.2d 216, 218 (Ala. 1951); Fowler v. Fowler, 294 So.2d 156, 158 (Ala. 1974).
 "In the instant case, the evidence is undisputed that [Dr. Maxwell] had suffered from COPD for many years. In the later years of his life he was required to be on oxygen twenty-four hours a day and regularly took Xanax, Percocet, morphine, DuoNeb, Q-bid DM, Chloracon potassium replacement, albuterol, *Page 287 
furosemide, captopril, Levaquin, and Oxycontin. The presence of these types of drugs alone would create a genuine issue of fact as to [Dr. Maxwell's] capacity.
 "Moreover, the affidavit of Dawkins's own witness, hospice social worker Kathy Donaldson, indicates that there were times when [Dr. Maxwell] was not alert and well oriented. The deposition testimony of [Dr. Maxwell's] sitter Mrs. Lash further indicates there were times when [Dr. Maxwell] was confused.
 "Clearly, this is sufficient evidence to create a genuine issue of fact to defeat summary judgment on the ground of mental capacity. The trial court erred in finding that [Dr. Maxwell] had sufficient mental capacity to revoke his will and therefore, [Robert] is entitled to have the trial court's decision reversed."
Thus, Robert essentially relies on the following three facts to support his argument that Dr. Maxwell lacked the mental capacity to revoke his will on August 25, 2004: 1) Dr. Maxwell was suffering from COPD; 2) he was on oxygen and regularly took multiple medications; and 3) two of his caregivers stated that there were times when he was confused or otherwise not alert. Even when viewed in the light most favorable to Robert, these facts fail to create a genuine issue of material fact as to whether Dr. Maxwell lacked the testamentary capacity to revoke his will. Notably, Robert has identified no evidence in the record, from a medical expert or otherwise, indicating that COPD or the oxygen and medications that Dr. Maxwell sometimes took affected his mental acuity in any way. Neither has Robert identified any evidence indicating what medications Dr. Maxwell had taken on the date or near the time he revoked his will. Finally, although there is evidence indicating that Dr. Maxwell was sometimes confused, Robert has not identified any evidence indicating that Dr. Maxwell was confused at the time he revoked his will. However, there is evidence to the contrary; McKelvey swore in his affidavit that Dr. Maxwell "seemed mentally sharp and socially appropriate" during the meeting in which the will was revoked. "[T]his Court is not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal."Totten v. Lighting Supply, Inc., 507 So.2d 502,503 (Ala. 1987) (citing Johnson v. Fishbein,289 Ala. 328, 267 So.2d 405 (1972)).
In light of the fact that Robert has not put forth substantial evidence indicating that Dr. Maxwell was either temporarily or permanently impaired when he revoked his will on August, 25, 2004, the summary judgment entered for Dawkins by the trial court was proper, notwithstanding the general principle that a testator's mental capacity is usually an issue for the jury.Allen v. Sconyers, 669 So.2d 113, 118 (Ala. 1995). The facts in this case are essentially analogous to those inCleveland v. Central Bank of the South, 574 So.2d 741,743 (Ala. 1990), a will contest in which this Court upheld a summary judgment in favor of the proponent of the will, stating:
 "Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c) and (e), [Ala.]R.Civ.P. Once the movant has made a prima facie showing of the absence of a genuine issue of material fact, the burden is upon the nonmovant to establish the existence of a genuine issue of material fact. Berner v. Caldwell, 543 So.2d 686
(Ala. 1989). . . .
 "We are unable to discern substantial evidence of [the testator's] lack of testamentary capacity. Indeed, the only evidence tending to prove lack of mental *Page 288 
capacity is to the effect that [the testator], from time to time, suffered lapses of memory and that his mental agility was progressively decreasing, traits which, without more, are far too common in elderly persons for the law to accept as evidence of lack of testamentary capacity. Otherwise, a mere showing of those traits common to the aging process would suffice as an inference of lack of testamentary capacity. We decline to so hold."
In the present case, there is evidence of Dr. Maxwell's generally poor physical condition and evidence indicating that, on occasion, he suffered episodes of confusion. However, we conclude that, without more, Robert has failed to present substantial evidence to establish that Dr. Maxwell lacked the testamentary capacity to revoke his will.
 V.
By signing his name beneath the phrase "I hereby revoke this last will and testament this 25th day of August 2004," Dr. Maxwell performed the physical act necessary to revoke his September 2002 will in accordance with §43-8-136(b). Moreover, Robert has failed to present substantial evidence indicating that, on August 25, 2004, Dr. Maxwell lacked the testamentary capacity to perform that revocation. Therefore, the summary judgment entered by the trial court in favor of Dawkins was proper, and that judgment is hereby affirmed.
AFFIRMED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.