991 So.2d 668 (2007)
SPECIAL ASSETS, L.L.C.
v.
CHASE HOME FINANCE, L.L.C.
First Properties, L.L.C.
v.
Chase Home Finance, L.L.C.
1060083 and 1060084.
Supreme Court of Alabama.
December 21, 2007.
Rehearing Applications Denied April 11, 2008.
*669 Banks C. Ladd, Mobile, for appellants.
Harlan I. Prater IV, Sara Anne Ford, and William E. Bonner of Lightfoot, Franklin & White, L.L.C., Birmingham, for appellee.
Jesse P. Evans III of Haskell Slaughter Young & Rediker, LLC, Birmingham; and James A. Bradford and Ed R. Haden of Balch & Bingham, LLP, Birmingham, for amicus curiae Alabama Land Title Association, in support of the appellee.
SMITH, Justice.
Special Assets, L.L.C., and First Properties, L.L.C., appeal separately from a summary judgment entered in favor of Chase Home Finance, L.L.C. ("Chase Finance"), in a consolidated action Chase Finance brought as the successor by merger to Chase Manhattan Mortgage Corporation ("Chase Manhattan"). We affirm.

*670 I. Factual Background and Procedural History

Jefferson County, Local Amendments, § 12, Constitution of Alabama of 1901 (Off.Recomp.) (hereinafter "Local Amendment § 12"), authorizes "[t]he county governing body" of Jefferson County to create fire-service districts in Jefferson County "to establish and maintain a system to fight or prevent fires."[1] Local Amend. § 12, ¶ 2. The expenses of the fire districts are to "be paid for by the proceeds of service charges or property taxes ... or by a combination of such proceeds." Id. § 12, ¶ 3. Service charges for the fire districts are "a personal obligation of the occupant" of "the property for which the services are provided or made available," and those charges are "a lien upon such property, enforceable by the sale thereof." Id. § 12, ¶ 4.
The present appeals arise from separate instances in which the fire districts of the communities of Center Point and Forestdale, in Jefferson County, foreclosed on properties for unpaid fire-service charges and then sold the properties to Special Assets and First Properties. The fire districts made no attempt to provide notice of those sales to any mortgagee through the mail or by personal service. Instead, the fire districts published notice of the sales in local newspapers in accordance with § 11-48-49, Ala.Code 1975.[2]

The Evans Property in the Forestdale Fire District (Case no. 1060083 Special Assets)
On July 11, 1997, Randolph Evans and Angela Evans purchased a parcel of real estate located in the Forestdale fire district in Jefferson County ("the Evans property"). That same day, the Evanses executed a mortgage on that property in favor of American Investment Mortgage, Inc., for $94,350, and American Investment assigned the mortgage to Chase Manhattan. On November 12, 1997, the assignment was recorded in the Jefferson County Probate Records Office.
The mortgage on the Evans property required the Evanses to pay the Forestdale fire district directly for any outstanding service charges. The Evanses failed to pay their fire-service charges, however, and the Forestdale fire district published notice in the Birmingham News, a daily newspaper, that the Evans property would be sold for failure to pay those charges.
On November 22, 1999, the Forestdale fire district conducted a foreclosure sale, at which it purchased the Evans property for $619.89, the amount of delinquent fire-service charges. On January 3, 2002, the fire district executed a quitclaim deed to the property in favor of Special Assets, L.L.C., for $2,355.25.
*671 On March 12, 2002, the Jefferson Probate Court issued a certificate of warning to redeem.[3] Even though the Evanses' loan was not a sub-prime loan, a copy of the certificate was mailed to an office in San Diego that handled sub-prime loans for Chase Manhattan. However, a copy of the certificate of warning to redeem was not mailed to the address Chase Manhattan had on file with the Jefferson County tax assessor or to the address of the registered agent for service of process for Chase Manhattan, which was on file with the secretary of state.

The Swoopes Property in the Center Point Fire District (Case no. 1060084First Properties)
On August 28, 1997, Danny Swoopes purchased property located in the Center Point fire district in Jefferson County and executed a mortgage on the property in favor of American Investment Mortgage, Inc., for $72,402. That same day, American Investment assigned the mortgage to Chase Manhattan; the mortgage was recorded in the Jefferson County Probate Records Office on November 12, 1997.
The mortgage required Swoopes to pay the Center Point fire district directly for any outstanding service charges. However, Swoopes failed to pay his fire-service charges, and, after publishing notice in the Alabama Messenger, a weekly newspaper, the Center Point fire district executed a quitclaim deed in favor of First Properties on April 15, 2002, for $1,200.
On August 5, 2004, at the request of First Properties, the Jefferson Probate Court issued a certificate of warning to redeem, and a copy was mailed to a Chase Manhattan address in Baton Rouge, Louisiana, which was not the address Chase Manhattan had on file with the Jefferson County tax assessor or the secretary of state.

The Proceedings in the Jefferson Circuit Court
Chase Finance filed separate actions in the Jefferson Circuit Court seeking declarations that the mortgage interests of Chase Finance in the Swoopes property and the Evans property had not been impaired by the foreclosure sales to First Properties and Special Assets.[4] Chase Finance later filed a motion to consolidate the two actions, which the Jefferson Circuit Court granted.
The circuit court entered a summary judgment in favor of Chase Finance in both actions, holding that the fire districts had failed to use "reasonable efforts to identify the mortgagees of the properties and to provide actual notice of the upcoming foreclosure sales" and therefore had violated Chase Finance's constitutional due-process rights. First Properties and Special Assets filed a joint motion to alter, amend, or vacate the judgment, which was denied. First Properties and Special Assets appeal.

II. Standard of Review
"We review a summary judgment and all questions of law de novo." Pinkerton Sec. & Investigation Servs., Inc. v. Chamblee, 961 So.2d 97, 101 (Ala.2006).

III. Discussion
As noted, in entering a summary judgment in favor of Chase Finance, the trial court held that the sale of the Evans property and the Swoopes property by the fire *672 districts violated the due-process rights of Chase Finance. The trial court found that in conducting the sales of those properties for delinquent fire-service charges the fire districts made no attempt to provide notice of the sales to any existing mortgagee such as Chase Financeother than by publishing a notice of the sale in a local newspaper.
The trial court found that Chase Finance, which held duly recorded mortgages on the properties before the foreclosure sales, was a "readily identifiable" mortgagee. Relying on Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the trial court held that the failure of the fire districts to use "reasonable efforts to identify the mortgagees of the properties and to provide actual notice of the upcoming foreclosure sales" violated the due-process rights of Chase Finance. First Properties and Special Assets challenge that ruling of the trial court.

A.
In Mennonite Board of Missions, the United States Supreme Court held that due process requires that "[w]hen [a] mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." 462 U.S. at 798, 103 S.Ct. 2706. First Properties and Special Assets do not dispute that Chase Finance held publicly recorded mortgages on the Swoopes property and the Evans property before and at the time the fire districts conducted the foreclosure sales. However, the recorded mortgages to Chase Manhattan do not include an address for Chase Manhattan; instead, those mortgages list "Chase Manhattan Mortgage Corporation" as the mortgagee.[5] Because no address for Chase Manhattan is listed on those mortgages, First Properties and Special Assets claim that the trial court erred in concluding that Chase Manhattan was a "readily identifiable" mortgagee.[6] In particular, First Properties and Special Assets assert:
"Chase Finance argues that Chase [Manhattan's] `address was on file with both the Jefferson County tax collector and the Alabama Secretary of State at the time of the [foreclosure sale by the fire districts].' [Chase Finance's] brief, p. 21. However, there is no such evidence in the record. The only evidence in the record is that the tax collector had an address for Chase [Manhattan] on December 6, 2004, which was kept in a separate non-public database used for mailing mortgage service providers ad *673 valorem tax bills. There is no evidence that the address was correct, that the tax collector had this information on the date of the sale, or that this information was available to the fire district. Furthermore, there is nothing in the record indicating that the Secretary of State had an address for Chase [Manhattan] at the time of the sale."
(First Properties' and Special Assets' reply briefs, pp. 14-15.)
There are several problems with the assertions made by First Properties and Special Assets in support of their argument that Chase Manhattan was not a "readily identifiable" mortgagee. First, their claim that "there is nothing in the record indicating that the Secretary of State had an address for Chase [Manhattan] at the time of the sale" is without merit. As Chase Finance points out on page 24 of its brief to this Court, it submitted evidence in its summary-judgment materials that "Chase Manhattan Mortgage Corporation" was registered with the secretary of state at the time of the foreclosure sales and that Chase Manhattan had a registered agent for service of process. First Properties and Special Assets, however, do not address that evidence or argue that it was controverted.
Second, First Properties and Special Assets' argument that "[t]here is no evidence that the address [on file with the tax collector on December 6, 2004,] was correct, that the tax collector had this information on the date of the sale, or that this information was available to the fire district" ignores the context in which that evidence was presented to the trial court. In the trial court, First Properties and Special Assets contended that Chase Manhattan received notice by mail of the certificates of warning to redeem that the probate court issued after the foreclosure sales by the fire districts to First Properties and Special Assets. First Properties and Special Assets contended that this later notice (in the certificates of warning to redeem) cured any due-process violation that had occurred at the original foreclosure sales.
It was in response to those arguments that Chase Finance offered evidence that the Jefferson County tax collector had an address for Chase Manhattan on file in December 2004 that was different from the address to which the probate court mailed the certificate of warning to redeem the Swoopes property. The probate court mailed the notice regarding the Swoopes property to an address in Monroe, Louisiana, on August 6, 2004, but the address on file with the tax collector, Chase Finance argued, was an address in Dallas, Texas. Based on that evidence, Chase Finance asserted to the trial court that "[t]he tax collector's list indicates that [the Dallas, Texas, address] was on the tax collector's rolls in 2004, the year the warning to redeem for this property was issued."[7]
Thus, the evidence regarding the address on file with the tax collector in December 2004 was offered in response to an argument that First Properties and Special Assets made in the trial court but abandoned on appeal. That evidence does not contradict Chase Finance's claims that Chase Manhattan's status as a mortgagee was readily ascertainable, nor does it contradict the evidence that Chase Manhattan was registered with the secretary of state *674 at the time of the foreclosure sales by the fire districts.
Finally, as Chase Finance points out, First Properties and Special Assets did not argue to the trial court that Chase Manhattan's status as a mortgagee was not readily ascertainable at the time of the foreclosure sales. Instead, First Properties and Special Assets argued that Chase Finance was not readily ascertainable; First Properties and Special Assets made that argument in support of their contention in the trial court that Chase Finance could not assert the due-process claims of Chase Manhattan. However, like their arguments that the alleged postsale notice (through the certificates of warning to redeem) "cured" any due-process violation that occurred in the failure to give Chase Manhattan presale notice of the fire districts' intent to foreclose on the properties, their argument that Chase Finance may not assert the due-process claims of Chase Manhattan has been abandoned.
Thus, in support of its argument that Chase Manhattan was a reasonably identifiable mortgagee, Chase Finance presented undisputed evidence that Chase Manhattan's address was on file with the secretary of state. First Properties and Special Assets do not argue that a mortgagee who has filed an address with the secretary of state is not readily identifiable.[8] Consequently, the trial court did not err in ruling that Chase Manhattan was a readily identifiable mortgagee entitled to more than an attempt to provide notice by publication alone. Accordingly, the trial court correctly held that Chase Manhattan's due-process rights were violated by the fire districts' sale of the properties without first attempting to provide notice to Chase Manhattan by mail or by personal service. Mennonite Board of Missions, supra.

B.
First Properties and Special Assets also argue that the due-process claims of Chase Finance are barred by the two-year statute of limitations set forth in § 6-2-38(1), Ala.Code 1975.[9] First Properties and Special Assets contend that the statute of limitations began to run when the fire districts conducted foreclosure sales of the propertiesi.e., November 22, 1999, for the Evans property and April 15, 2002, for the Swoopes property.[10] Chase Finance *675 filed its action regarding the Evans property on September 12, 2005, and its action regarding the Swoopes property on April 14, 2005. Therefore, First Properties and Special Assets argue that the actions were untimely.
Chase Finance contends that First Properties and Special Assets did not timely raise the statute of limitations as a defense, that the trial court did not consider the merits of that defense, and that the trial court did not exceed its discretion in refusing to do so. We agree. A defense based on a statute of limitations is an affirmative defense. Rule 8(c), Ala. R. Civ. P. "`Typically, if a party fails to plead an affirmative defense, that defense is deemed to have been waived.'" Ziade v. Koch, 952 So.2d 1072, 1075 (Ala.2006). In its responsive pleadings, First Properties did not plead the statute of limitations as a defense. Moreover, in its materials filed before the entry of the summary judgments, First Properties did not assert that Chase Finance's claims were barred by the statute of limitations. Instead, First Properties raised the statute of limitations as a defense for the first time when it filed its postjudgment motion under Rule 59(e), Ala. R. Civ. P. Consequently, by not pleading or asserting the affirmative defense of the statute of limitations until after the trial court had entered a summary judgment against it, First Properties waived its right to assert that defense. Giles v. Ingrum, 583 So.2d 1287, 1289 (Ala.1987).
Chase Finance points out that in its answer Special Assets made the general statement that it "asserts the defenses of waiver, estoppel, laches, lapse, and the applicable statutes of limitation." However, Chase Finance also notes that, like First Properties, Special Assets made no argument regarding the statute of limitations in the materials it filed before summary judgment. Thus, Special Assets waited until it filed its postjudgment motion under Rule 59(e), Ala. R. Civ. P., to attempt to prove that Chase Finance's claims were untimely.
In its briefs to this Court, Special Assets does not address whether its general assertion of the statute-of-limitations defense in its answer was sufficient to prevent a finding that its failure to attempt to prove the defense until its postjudgment motion constituted a waiver of the defense.[11] Instead, *676 Special Assets argues, as does First Properties, that this Court may review the merits of the statute-of-limitations defense because (1) the defense was asserted in postjudgment materials, and (2), First Properties and Special Assets contend, in ruling on their postjudgment motion under Rule 59(e), Ala. R. Civ. P., the trial court "considered" the statute-of-limitations defense and rejected it on the merits.
First Properties and Special Assets cite this Court's decision in Maxwell v. Dawkins, 974 So.2d 282 (Ala.2006). Maxwell involved a will contest between Robert Maxwell, Jr., and Dollye Diane Dawkins. Robert sought to probate a will signed by the testator in September 2002, but Dawkins contended that the September 2002 will had been revoked in August 2004. The trial court entered an order granting Dawkins's motion for a summary judgment and holding that there had been a valid revocation of the September 2002 will. 974 So.2d at 284.
Robert filed a "motion to reconsider" in which he "raised for the first time the issue whether [the testator] had, on August 25, 2004, the mental capacity to revoke his will." 974 So.2d at 284. The trial court then entered an order amending its earlier judgment and stating specifically that "`the testator at the time of the act of signing beneath the words of revocation possessed sufficient capacity to revoke his will.'" 974 So.2d at 284.
On appeal to this Court, Dawkins contended that Robert had waived the issue of mental capacity and could not raise it on appeal because, she argued, "Robert [had] not articulate[d] this argument in his summary-judgment motion, in his response opposing Dawkins's summary-judgment motion, or in his reply to Dawkins's response to his summary-judgment motion." 974 So.2d at 286. This Court rejected Dawkins's argument, however.
Although Robert had not timely raised the issue of mental capacity and the trial court therefore was under no obligation to consider it, "the trial court [had] the discretion to consider the argument, and it appear[ed] to have done so." 974 So.2d at 286. Because the trial court had amended its judgment to state specifically that the testator had the mental capacity to revoke his will, the trial court had ruled on the issue, and "Robert may challenge that ruling on appeal notwithstanding his failure to raise it before the trial court entered its judgment." 974 So.2d at 286.
The trial court's order denying First Properties and Special Assets' postjudgment motion in the present case states in its entirety: "After consideration of [First Properties and Special Assets' postjudgment motion] and [Chase Finance's] *677 response thereto, the Court concludes that the motion is due to be denied." First Properties and Special Assets contend that the word "consideration" in that order means that the trial court ruled on the merits of their statute-of-limitations argument in the same way the trial court in Maxwell ruled on the issue of testamentary capacity.
We disagree. The trial court in Maxwell specifically amended its judgment to rule on the issue of capacity; thus, there was evidence that the trial court considered a new legal argument raised for the first time in a postjudgment motion. In the present case, however, the order of the trial court denying First Properties and Special Assets' postjudgment motion does not indicate why that motion was denied. Instead, the basis for its denial is not discernible from the general language used in the order.[12]
It is well settled that "`this Court will affirm a judgment for any reason supported by the record that satisfies the requirements of due process.'" Hollis v. City of Brighton, 950 So.2d 300, 308-09 (Ala.2006) (quoting Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala.2006), and citing Taylor v. Stevenson, 820 So.2d 810, 814 (Ala.2001)). Chase Finance argued to the trial court that, by waiting until after the judgment to raise it, First Properties and Special Assets waived the defense of the statute of limitations.[13] However, neither First Properties nor Special Assets argued to the trial court that it had timely raised the defense of the statute of limitations, and neither offered a reason for the delay in raising or attempting the prove the defense.[14] Thus, in ruling on First Properties and Special Assets' postjudgment motion, the trial court had before it the unrebutted argument that their statute-of-limitations defense was untimely. Although the trial court had the discretion to consider the merits of the statute-of-limitations defense, there is no indication that it did so, *678 and we will not presume to the contrary. See Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988) ("[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so."). Consequently, First Properties and Special Assets' arguments regarding the statute of limitations do not show that the trial court erred in denying their postjudgment motion.

C.
Chase Finance and amicus curiae Alabama Land Title Association urge this Court to review two additional rulings of the trial court. First, the trial court concluded in its summary-judgment order in favor of Chase Finance "that the liens created by the fire district assessments had priority over the mortgage liens of [Chase Manhattan]." The trial court based that conclusion on § 12 of Act No. 79, Ala. Acts 1966 (Special Session), as amended by Act No. 500, Ala. Acts 1978, which provides:
"The expense of establishing and maintaining a district shall be paid for [sic] the proceeds of a service charge which shall be levied and collected in an amount sufficient to pay said expense. Said service charge shall be levied upon and collected from the property owners served by the system. Such charge shall be a personal obligation of the owner of the property served by the system; and to secure the collection of the charge there shall be a lien against said property in favor of the district, which lien shall be enforceable by sale thereof in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized."
The trial court's order states:
"The law pertaining to foreclosures of liens created by municipal assessments is found in `The Municipal Public Improvement Act,' [§§ 11-48-1 to -106, Ala.Code 1975]. Pursuant to Ala.Code 1975, § 11-48-29, an assessment for the costs of improvement constitutes a lien on each property on which the assessment is levied, which lien is `superior to all other liens, except those of the state and county for taxes.'"
The trial court recognized that Local Amendment § 12 does not include a provision establishing that fire-district-service liens are "superior to all other liens, except those of the state and county for taxes." Even so, the trial court concluded that such express language in Local Amendment § 12 was not necessary and that the fire districts' liens had priority over the earlier recorded mortgages of Chase Manhattan. Chase Finance and the Land Title Association disagree with that conclusion.
Chase Finance and the Land Title Association urge us to hold that the fire districts' liens do not have priority over the mortgages of Chase Manhattan; they insist that our review of that issue is permissible because, they contend, we would still be "affirming" the judgment of the trial court in favor of Chase Finance. However, First Properties and Special Assets argue that such a holding by this Court would not be an affirmance of the judgment of the trial court; instead, they contend that such a holding "would constitute the rendering of a new judgment holding that Chase Finance holds superior title and therefore does not need to redeem the property." (First Properties' and Special Assets' reply briefs, p. 21.) First Properties and Special Assets argue that Chase Finance should have filed a cross-appeal if it wanted to obtain appellate review of that part of the judgment holding that the fire districts' liens have priority.
We agree with First Properties and Special Assets. This Court could not hold *679 that the fire districts' liens do not have priority unless we reversed the trial court's ruling on that issue in favor of First Properties and Special Assets. Such a holding would mean that Chase Finance's interests in the properties are superior to those of the fire districts through which First Properties and Special Assets claim title to the properties. See, e.g., § 35-4-90(a), Ala.Code 1975, which provides:
"All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors."
See also Jesse P. Evans, Alabama Property Rights & Remedies § 5.3[b] (3d ed. 2004) ("Once a mortgage is duly executed and properly recorded, it has priority over subsequently created interests, if the mortgagee has no notice of a competing interest.").
Thus, a holding that the fire districts' liens do not have priority would not merely affirm, on an alternative ground, the summary judgment in favor of Chase Financeit would enlarge the interests of Chase Finance to the property and diminish the interests of the fire districts and, derivatively, First Properties and Special Assets. Consequently, because Chase Finance did not file a cross-appeal from that part of the judgment holding that the fire districts' liens have priority, we may not review the correctness of that ruling.[15]See McMillan, Ltd. v. Warrior Drilling & Eng'g Co., 512 So.2d 14, 25-26 (Ala.1986) (opinion on rehearing), in which this Court held that the appellees in that case
"were required to file a cross-appeal in order to preserve for appellate review the question of whether summary judgment was properly granted on grounds other than those relied upon by the trial court....
"We find that the proper rule is set forth by Professor Moore:
"`[A]n appellee, though he files no cross-appeal or cross-petition, may offer in support of his judgment any argument that is supported by the record, whether it was ignored by the court below or flatly rejected. The classic statement of this principle appears in the opinion of Mr. Justice Brandeis, speaking for a unanimous Court in United States v. American Railway Express Co.[, 265 U.S. 425, at 435, 44 S.Ct. 560, at 564, 68 L.Ed. 1087] in 1924:
"`"[A] party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it."

*680 "`By 1937, this formulation was referred to by the Court as "inveterate and certain," and it has been reiterated many times since then.'
"9 J. Moore and B. Ward, Moore's Federal Practice ¶ 204.11[2] (2d ed. 1985). None of the cases cited on original deliverance for support of the opposite rule deals with this precise issue. In all of those cases, the appellee was attempting to argue for alteration of the judgment to enlarge his rights. Under such circumstances, those cases correctly held that a cross-appeal must be filed. In this case, appellees merely seek to argue grounds other than those relied upon by the trial court that support the summary judgment and in no way seek any more than what they have already obtained."
(Footnote omitted.)
Related to that ruling is the relief the trial court ordered, which is the other ruling of the trial court the Alabama Land Title Association asks us to review on appeal. To remedy the violation of the due process of Chase Finance, the trial court's order "revived" and "extended" the statutory right of redemption established under § 11-48-54, Ala.Code 1975. Section 11-48-54 provides:
"Any real property heretofore or hereafter sold for the satisfaction of a local improvement assessment lien imposed thereon by the governing body of a municipality may be redeemed by the former owner, or his assigns, ... within two years from the date of such sale by paying to the purchaser at such sale or to any person deraigning title under such purchaser or to the city or town treasurer for such purchaser or person deraigning title under such purchaser the amount of the purchase price for which the property was sold at such sale plus an amount equal to interest on such purchase price from the date of such sale to the date of redemption at the rate of six percent per annum plus a fee of $2.00 to cover the expense of a conveyance...."
The Alabama Land Title Association suggests that this Court "modify" the trial court's remedy and declare void the deeds from the fire district to First Properties and Special Assets. However, neither First Properties and Special Assets, on the one hand, nor Chase Finance, on the other, have asked us to do so. Therefore, we decline to address or express any opinion regarding the correctness of the remedy ordered by the trial court.

IV. Conclusion
We affirm the summary judgment of the trial court holding that the fire districts' foreclosure sales of the properties violated the due-process rights of Chase Finance.
1060083AFFIRMED.
1060084AFFIRMED.
COBB, C.J., and SEE and WOODALL, JJ., concur.
PARKER, J., concurs specially.
PARKER, Justice (concurring specially).
I fully concur with the holding of the Court as presented in the main opinion. I write specially because an issue that was not raised by the parties is important to cases that involve public corporations such as the fire districts whose actions precipitated the cases here.
The parties did not dispute the applicability to the fire districts of the "due process" requirement of Amendment XIV to the United States Constitution; yet the fire districts were not a party to the actions so that they could dispute the applicability to them of that requirement. Whether a fire district that is organized as a public corporation owes such a duty to any other person or entity is an unsettled *681 question in Alabama. "It is well established by the decisions of this Court that a public corporation is a separate entity from the State and from any local political subdivision thereof, including a city or county...." Knight v. West Alabama Envtl. Imp. Auth., 287 Ala. 15, 19, 246 So.2d 903, 905 (1971). A State actor would owe the mortgagee a duty of due process, but a private actor owes no such duty. Are the fire districts state actors or private actors?
There is at this point no clear answer to this question. The United States Supreme Court considered a case involving a regulated electric utility that terminated service to a customer; the Supreme Court determined that although the State regulated the utility, it was not sufficiently involved in the termination of service to make the utility's conduct attributable to the State for purposes of the Fourteenth Amendment. In reaching this decision, Justice Rehnquist, writing for the Court, stated that "the inquiry must be whether or not there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.... [A] detailed inquiry may be required in order to determine whether the test is met." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). This Court found, in Water Works & Sewer Board of Talladega v. Consolidated Publishing, Inc., 892 So.2d 859 (Ala.2004), that employees of the municipal water board were "public officers and servants" of the city, where the public corporation was established by the city, operated out of city hall, had its board members appointed by the city council, and performed a municipal function.
No party in this case raised the issue of the applicability of Fourteenth Amendment due process to a fire district, a public corporation that appears to be different from a municipal utility. For this reason, the details of any nexus with the State were not presented, and, consequently, this case does not address that complex issue, which awaits future resolution. Therefore, I can and do concur with the main opinion.
NOTES
[1] Local Amendment § 12 comprises three amendments to the Constitution of Alabama of 1901: Amendment no. 239, Amendment no. 314, and Amendment no. 369, which were ratified in 1965, 1972, and 1977, respectively.
[2] Section 11-48-49, Ala.Code 1975, provides for the sale of land in the event a property owner fails to pay an assessment due under "The Municipal Public Improvement Act," § 11-48-1 et seq., Ala.Code 1975. The only notice required under § 11-48-49 for an assessment-due sale is notice by publication.

The fire districts conducted the sales here under § 11-48-49 based on § 12 of Act No. 79, Ala. Acts 1966 (Special Session), as amended by Act No. 500, Ala. Acts 1978. That section states that a service charge levied for fire districts in Jefferson County is "a personal obligation of the owner of the property served by the system," and "to secure the collection of the charge" § 12 creates a "lien against said property in favor of the district, which lien shall be enforceable by sale thereof in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized."
[3] See § 11-48-58, Ala.Code 1975; see also supra note 2.
[4] Chase Finance filed the action against First Properties on April 14, 2005 (case no. 1060084); it filed the action against Special Assets on September 12, 2005 (case no. 1060083).
[5] Despite the suggestion of First Properties and Special Assets to the contrary, nothing in the record indicates anything unusual about the fact that the assignments did not include an address for Chase Manhattan. Chase Finance contends:

"One reason for not including addresses on an assignment is that those instruments are likely to be in force for decades. Assignees' mailing addresses are likely to change over the life of a typical mortgage; inscribing one onto the instrument only invites faulty mailings.
"... First Properties did not ensure that its own address appeared on its foreclosure deed. Would the appellant argue that for this reason its own due process rights must be partially sacrificed?"
(Chase Finance's brief, pp. 30-31 n. 9.)
[6] First Properties and Special Assets argue therefore that constructive noticein this case, service by publicationwas sufficient under the circumstances to protect the due-process rights of Chase Finance. See Mennonite Board of Missions, 462 U.S. at 798, 103 S.Ct. 2706 ("But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane [v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)]." (emphasis added)).
[7] Additionally, Chase Finance argued:

"The Probate Court's attempt to provide Chase with notice of the expiration of its right to redeem could not retroactively satisfy the Fire District's constitutional obligation to provide Chase with prior notice of the actual sale. Even if it could, the mailing of the warning to redeem was so fraught with procedural improprieties that it should have no effect."
[8] Moreover, First Properties and Special Assets point to no evidence in the record suggesting that Chase Manhattan had failed to properly record its mortgages to the properties or that a reasonable effort by the fire districts to search the Jefferson County probate records would have resulted in anything other than discovering the properly recorded mortgages of Chase Manhattan. Thus, there is no support in the record or in the authorities relied upon by First Properties and Special Assets for their claim that the fire districts would have had to perform "some heroic search" to locate Chase Manhattan's publicly recorded interest in the properties. See Reed v. State ex rel. Davis, 961 So.2d 89, 95 (Ala.2006) ("As this Court has previously stated, it is not the duty of an appellate court to perform a party's legal research, Spradlin v. Birmingham Airport Auth., 613 So.2d 347 (Ala. 1993), nor is this Court obligated `to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.' Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994).").
[9] Section 6-2-38(l), Ala.Code 1975, provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."
[10] Chase Finance disputes First Properties and Special Assets' claim that the statute of limitations began to run on the dates of the sales by the fire districts. Because we conclude that First Properties and Special Assets waived the statute of limitations as a defense, we express no opinion on when the applicable statute of limitations began to run.
[11] It does not appear that this Court has addressed the questionat least not in a case decided under the Alabama Rules of Civil Procedure, which were adopted in 1973 whether a party waives its right to assert a statute-of-limitations defense when the party makes only a general assertion of the defense in a responsive pleading but does not attempt to prove the elements of that defense until after a judgment has been entered against it. However, in support of its argument that such action by a party constitutes a waiver of the defense, Chase Finance cites the decision of the Court of Civil Appeals in Magic Tunnel Car Wash Equipment Co. v. Brush King Franchises, Inc., 53 Ala.App. 345, 300 So.2d 116 (1974), a case filed before the Alabama Rules of Civil Procedure were adopted in 1973.

In Magic Tunnel Car Wash, the Court of Civil Appeals held that the trial court did not err in refusing to allow the defendant to assert a statute-of-limitations defense that was not argued until after the judgment was entered. 53 Ala.App. at 349-50, 300 So.2d at 118-20. The defendant had filed a "plea in short" in response to the plaintiff's complaint, and the defendant argued that its "plea in short" was sufficient notice to the trial court that the defendant intended to rely on the statute of limitations as a defense. 53 Ala. App. at 349, 300 So.2d at 118-19. Although it recognized that "the plea of the statute of limitations has been held to be encompassed by the plea in short," the Court of Civil Appeals nevertheless rejected the defendant's argument. 53 Ala.App. at 349, 300 So.2d at 119. The court noted that "the trial was not conducted on the theory that the statute of limitations was a defense" and that "the first notice that the trial court had of the statute of limitations being relied on as a defense to the action was during oral argument on the motion for new trial." 53 Ala.App. at 349-50, 300 So.2d at 119. The court concluded that the "defendant waited too late to apprise the trial court of its reliance on the defense of the statute of limitations." 53 Ala.App. at 350, 300 So.2d at 119.
That holding in Magic Tunnel Car Wash supports a finding that, by failing to attempt to prove its statute-of-limitations defense until after judgment had been entered against it, Special Assets waived the defense. See also Ex parte Ramsay, 829 So.2d 146, 152 (Ala. 2002) ("The proponent of an affirmative defense `bears the burden of proving the essential elements of his affirmative defenses.'" (quoting Ex parte Blue Cross & Blue Shield of Alabama, 773 So.2d 475, 478 (Ala.2000))). However, because Special Assets has not argued that its general assertion of the defense precludes a finding of waiver, we address only its argument that the trial court "considered" the merits of the statute-of-limitations defense, which Special Assets contends was sufficient to preserve for appellate review the merits of that defense.
[12] Special Assets and First Properties did not seek clarification from the trial court regarding its basis for denying their postjudgment motion.
[13] In their postjudgment motion, First Properties and Special Assets also argued that Chase Finance was required to present its due-process claims in an action under 42 U.S.C. § 1983, which Chase Finance had not done. Like its argument regarding the statute of limitations, that argument was raised for the first time in First Properties and Special Assets' postjudgment motion.

In its opposition to First Properties and Special Assets' postjudgment motion, Chase Finance made the following argument:
"[First Properties and Special Assets] attack the judgment by arguing, for the first time,1 that the exclusive remedy for challenging a deprivation of constitutional rights is an action under 42 U.S.C. § 1983. Building on the claimed premise, [First Properties and Special Assets] argue that a § 1983 claim is not available against them as they are not state actors, and even if they were, such a claim would be barred by the statute of limitations.
"_________________
"1 The Court should not consider the merits of [First Properties and Special Assets'] motion. The section 1983 defense now claimed by [First Properties and Special Assets] was not raised in [their] responsive pleadings or, for that matter, in any pleading before this motion. A trial court, in its discretion, may refuse to consider a post-judgment motion which raises a new legal argument absent reasonable justification for the delay. See e.g., Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1370 (Ala. 1988). There is no justification for [First Properties and Special Assets'] failure to timely assert this supposed defense."
[14] As noted, see supra note 11, and accompanying text, Special Assets has not argued that its general assertion of "the applicable statute of limitations" in its answer was sufficient to preclude a finding of waiver.
[15] We therefore express no opinion as to whether the trial court correctly determined that the fire districts' liens have priority over the mortgages of Chase Manhattan.