BRYAN, Judge.
On February 29, 2008, the State of Alabama, on behalf of Tim Morgan, District Attorney of Madison County, filed a complaint seeking the forfeiture of $7,170 in cash seized from Gardner Carlisle. The complaint, filed pursuant to § 20-2-93, Ala.Code 1975, sought the forfeiture of the seized currency based on the allegation that it “was furnished or intended to be furnished in exchange for a controlled substance in violation of Alabama law and/or was proceeds of a controlled substance exchange.” Carlisle answered, denying the material allegations of the complaint and asserting that the money was not related to any illegal drug transaction.
On June 12, 2009, Carlisle died, and on August 20, 2009, the State filed a suggestion of death. The estate of Carlisle (“the estate”) subsequently filed a notice of substitution of party and proceeded to defend on Carlisle’s behalf. See, e.g., Pickron v. State ex rel. Johnston, 443 So.2d 905, 906 (Ala.1983) (in which the administratrix of an estate was substituted as a party in a forfeiture case following the death of the owner of the personal property and the money sought to be forfeited).
On September 19, 2011, the trial court conducted an ore tenus hearing. On September 22, 2011, the trial court entered a judgment ordering the forfeiture of the seized currency to the State. In its judgment, the trial court stated that it was “reasonably satisfied that [Carlisle] had been selling [prescription] pills” and that “the currency was proceeds from a controlled substance exchange.”
On October 22, 2011, the estate filed a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., asserting that the State had failed to promptly institute the forfeiture action and that the State had failed to establish a prima facie case. Following a hearing, the trial court denied the postjudgment motion. The estate filed a timely appeal to this court.
We first address the estate’s argument that the forfeiture action was not “instituted promptly,” as required by § 20-2-93(e), Ala.Code 1975. The estate first presented this argument in its post-judgment motion. “[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so. [An appellate court] will reverse only if the trial court abuses that discretion.” Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369-70 (Ala.1988).
In this case, there is no indication that the trial court considered the merits of the argument that the forfeiture action was not promptly initiated. When the estate presented that argument at the hearing on the postjudgment motion, the trial court seemed to indicate that it would not consider the merits of the argument. The trial court stated: “Once a Court has actually tried a case and the case is over, ... you can’t come back and then argue that the case was supposed to be dismissed [for failure to promptly initiate the action] after the trial. That’s something you have to raise at the trial.” In its order denying the postjudgment motion, the trial court simply stated that, “[a]fter considering written submissions and oral arguments, it *766 is hereby ordered ... that the motion be denied.” (Capitalization omitted.) In Special Assets, L.L.C. v. Chase Home Finance, L.L.C., 991 So.2d 668, 676-77 (Ala.2007), our supreme court concluded that a trial court’s summary denial of a post-judgment motion, similar to the denial here, indicated that the trial court did not consider the merits of an argument made for the first time in the postjudgment motion. Similar to this case, in Special Assets, the trial court’s order denying the postjudgment motion merely stated: “ ‘After consideration of [the postjudgment motion] and [the] response thereto, the Court concludes that the motion is due to be denied.’ ” 991 So.2d at 676-77.
In this case, although the trial court had the discretion to consider the merits of the new legal argument in the postjudgment motion, there is no indication that it did so. The estate has not shown any basis for holding that the trial court exceeded its discretion in failing to consider the estate’s argument regarding promptness. Therefore, we do not address this argument further.[1]
Next, the estate argues that the evidence does not establish that the $7,170 seized from Carlisle was used or intended to be used in violation of Alabama’s controlled-substance laws. Section 20-2-93(a)(4), Ala.Code 1975, provides that the following are subject to forfeiture:
“All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state; all proceeds traceable to such an exchange; and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of any law of this state concerning controlled substances.”
“ ‘ “Under § 20-2-93 the State must establish a prima facie case for the seizure, condemnation, and forfeiture of the property. The standard of proof is reasonable satisfaction. The statute is penal in nature and, as such, should be strictly construed.” ’ ” Ex parte McConathy, 911 So.2d 677, 681-82 (Ala.2005) (quoting Holloway v. State ex rel. Whetstone, 772 So.2d 475, 476 (Ala.Civ.App.2000), quoting in turn State v. Smith, 578 So.2d 1374, 1376 (Ala.Civ.App.1991)). “On appellate review of a ruling from a forfeiture proceeding at which the evidence was presented ore ten-us, the trial court’s findings of fact are presumed to be correct and the judgment will be reversed only if it is contrary to the great weight of the evidence.” Atkins v. State, 16 So.3d 792, 795 (Ala.Civ.App.2009).
“Our forfeiture cases have found the following circumstances to be indicative of contemplated or completed drug transactions: a large quantity of drugs, see, e.g., Shepherd v. State, 664 So.2d 238 (Ala.Civ.App.1995) (21 pounds of marihuana); drugs packaged for sale, see, e.g., Pointer v. State, 668 So.2d 41 (Ala.Civ.App.1995); drug paraphernalia or accouterments indicating sale, such as ‘baggies’ or scales, see, e.g., Johnson v. State, 667 So.2d 105, 108 (Ala.Civ.App.1995)....
“Our forfeiture cases have also remarked on the inherent incredibility of a defendant’s explanation for having in his or her possession a large quantity of cash. See, e.g., Harris v. State, 821 So.2d 177 (Ala.2001) (finding inherently *767 incredible a defendant’s story that the source of $120,000 in cash was a $90,000 payment the defendant received upon her husband’s death 17 years earlier, an amount that the defendant said had increased to $120,000 despite the fact that the defendant admitted that she kept the money at home in shoe boxes and lent some to friends, but charged no interest). See also Vaughn v. State, 655 So.2d 1039, 1041 (Ala.Civ.App.1995) (noting that the defendant, who was found with a large amount of cash, was unemployed and had ‘no visible means of support’).”
Gatlin v. State, 846 So.2d 1090, 1093 (Ala.Civ.App.2002).
At trial, the State elicited the testimony of Stephen Reaves, an officer with the Madison Police Department. Reaves testified as follows. Reaves received information from a confidential informant that Carlisle was selling “a large amount” of Oxycontin, a controlled substance. The informant arranged to purchase 25 Oxycontin pills for $60 each from Carlisle, ie., for a total of $1,500 (25 x $60 = $1,500). Carlisle agreed to meet the informant at a local lounge to sell the informant the Oxycontin. On February 7, 2008, officers observed Carlisle leaving his residence in an automobile, and they followed him en route to the lounge. As Carlisle approached the lounge, the officers stopped Carlisle’s vehicle and questioned him. According to Reaves, Carlisle admitted that he was going to the lounge “because [the informant] needed pills,” that he had “sold pills” at his residence the previous month, and that he had lent three Oxycontin pills to someone the previous week. When Reaves searched Carlisle, he recovered a variety of prescription pills: 25 Oxycontin pills in a prescription bottle, 40 Xanax pills in a prescription bottle, and 5 loose pills that Reaves described as Lortab and Lorcet. Reaves also found $7,170 in varying bills in Carlisle’s pockets. Reaves testified that Carlisle never said that the $7,170 was related to any illegal drug transactions.
Carlisle produced a prescription for the Oxycontin and Xanax pills, and those pills where returned to him. Reaves seized the Lortab and Lorcet pills because Car-lisle did not produce a prescription for those controlled substances. Reaves also seized the $7,170. According to Reaves, Carlisle was not arrested at that time because he agreed to assist the police in another drug case and to produce prescriptions for the Lorcet and Lortab. However, Carlisle never produced those prescriptions. Carlisle was subsequently charged with possession of a controlled substance and criminal conspiracy to commit a controlled-substanee crime, and a warrant was issued for his arrest. However, when Reaves learned that Carlisle had died, the charges and arrest warrant were dismissed.
At trial, the estate presented an affidavit prepared by Carlisle before his death. In the affidavit, Carlisle testified, in pertinent part:
“I’m the owner of the [seized] $7,170 and said money is not proceeds of a drug sale nor did I intend to purchase drugs with said money. I got the sum from the sale of a truck for $2,800.00, and the balance from sales of flea market items I sold in Nashville. I was on my way to buy items at various flea markets for resale when the money was confiscated.”
The estate also elicited the testimony of Carlisle’s former attorney, who testified that he had heard Carlisle talk about buying and selling cars and “other things, too.”
The trial court based its forfeiture judgment on its determination that the $7,170 seized from Carlisle was “proceeds from a controlled substance exchange.” We must *768 determine whether the State established, to a reasonable satisfaction, that the money was proceeds from illegal drug activity. We considered a similar issue in King v. State, 938 So.2d 967 (Ala.Civ.App.2006). In King, two informants told narcotics agents that they had bought narcotics from King “in the past.” 938 So.2d at 968. The agents subsequently sent one of the informants to King’s house to buy narcotics. Shortly after the informant had purchased narcotics from King, police officers executed a search warrant on King’s house. Id. In addition to the $9,000 in marked currency that the informant had paid King for the narcotics, the officers found $833 in King’s wallet and $8,500 in a jacket pocket, for a total of $9,333. The dispute in King concerned whether the $9,333 was due to be forfeited under § 20-2-93. The officers found no illegal drugs, drug paraphernalia, scales, or other indicia of the illegal drug trade in the house. Goode, who lived in the house with King, testified that she had been saving the seized $8,500 from her work paychecks. Id. at 969. A drug-task-force officer testified that King claimed that the $833 in his wallet was from a disability check. Id. The State presented no evidence linking any of the $9,333 to illegal drugs, nor did the State present any evidence disputing King’s and Goode’s explanations as to the source of the seized money. Id. at 970-71. This court reversed the trial court’s judgment ordering the forfeiture of the $9,333. The facts in King indicated “no link, either direct or circumstantial, between the seized money and a drug transaction.” Id. at 973.
This case and King are materially similar. In King, King sold narcotics to an informant. In this case, evidence indicated that Carlisle planned to sell Oxycontin to an informant. In both cases, there was no evidence indicating that the money seized was directly related to a controlled buy or planned control buy. Rather, the State in each ease primarily relied on the evidence of a particular drug transaction or planned drug transaction to argue that the money seized was the result of earlier illegal drug activity.
In King, two informants told narcotics agents that they had bought narcotics from King “in the past.” In this case, Reaves testified that Carlisle stated that he had sold some prescription pills at his residence the month before the planned controlled buy. This evidence of past drug activity is temporally more specific than the evidence of past drug activity in King. However, the evidence of previous drug activity in this case is not specific enough to connect the seized $7,170 to such activity. There is no evidence regarding how much money Carlisle received for the pills he sold at his residence. Further, there is limited evidence regarding the quantity of prescription pills that Carlisle possessed, i.e., the prescription pills that he could have sold. When he was pulled over by the officers, Carlisle had 25 Oxycontin pills that he planned to sell for a total of $1,500, 40 pills of Xanax, and 5 total pills of Lorcet and Lortab. The quantity of prescription pills that Carlisle had at an earlier time is unclear. Further, as in King, the State did not present evidence directly disputing Carlisle’s explanation as to the source of the seized money.
“ ‘[Mjere suspicion is insufficient to support a judgement of forfeiture.’ ” Ex parte McConathy, 911 So.2d at 688 (reversing a forfeiture judgment in an action in which the defendant presented testimony, that the State did not refute, that he had prescriptions for at least some of the pills and in which there was no concrete evidence tying the seized $8,000 to a specific drug transaction, past or future). In this case, there is insufficient evidence connecting the seized $7,170 to illegal drug *769 activity. Although the evidence may lead one to suspect that Carlisle obtained the money from illegal drug activity, “speculation will not support” a forfeiture judgment. Ex parte McConathy, 911 So.2d at 688. This case is distinguishable from cases involving the forfeiture of money in which the State presented detailed evidence connecting the seized money to drug activity, see, e.g., Harris v. State, 821 So.2d 177 (Ala.2001), or in which witness credibility was a crucial factor in determining a drug connection, see, e.g., Hillegass v. State, 795 So.2d 749 (Ala.Civ.App.2001). Rather, this case is analogous to King in that the State did not establish the requisite connection between the money and illegal drug activity.
Based on the foregoing, we reverse the judgment forfeiting the $7,170, and we remand the case.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The issue whether a forfeiture action was promptly initiated does not implicate the trial court’s subject-matter jurisdiction. Tucker v. State, 445 So.2d 311, 314 (Ala.Civ.App.1984). Thus, that issue must be presented in the trial court for this court to reverse on that issue. Id.