ROBERTSON, Presiding Judge.
On November 5, 1990, the trial court entered a judgment divorcing the parties, Jolee Havard and Ross Havard. In the divorce judgment, the mother was awarded custody of the parties’ three minor children, Wren, John, and Paula. The father was ordered to pay the mother child support in the amount of $486 per month and to pay 75% of all the uninsured prescription drug, medical, and dental expenses incurred by the parties’ minor children.
In April 1992, the father’s child support obligation was reduced from $486 to $300 by an order of the trial court, and he was found to be $372 in arrears in payment of child support. On November 4, 1992, the trial court ordered the father to pay the wife $423 for medical expenses incurred by the parties’ minor children. Following a hearing in December 1992, the trial court increased the father’s child support obligation back to $486.
On December 20, 1993, the mother filed a rule nisi motion, alleging that Wren, one of the parties’ minor children, was an “educable mentally retarded” child; that Wren did not have the ability to care for herself; that Wren would continue to be disabled beyond the age of majority and would need continuing support; that as of December 9,1993, the father’s child support payments were in ar-reai’s in the amount of $1,108 plus intex-est; that the father was inquired to pay 75% of all the uninsured prescription drug, medical, and dental expenses incux-red by the pai’ties’ minor children; and that the father owed the mother $2,133.69 plus interest, $1,710.44 awarded in the divoi'ce judgment, and $423.35 awarded in a subsequent judgment for medical expenses that the minor childi’en had incurred.
Oh December 27, 1993, the trial court ordered the parties to exchange full and complete financial information and set the case for trial on March 10, 1994.
On February 4, 1994, the father answered the mother’s petition, denying that Wren was an “educable mentally retarded” child and that she did not have the ability to care for herself. The father also filed a countei-petition, requesting that the tidal coui’t modify the divoi’ce judgment if it found Wren to be disabled and in need of continuing support, so that she could live with him in Birmingham, Alabama, to pursue educational training, vocational training, and other activities in that location; that the mother be directed to apply for any SSI benefits that might be available to Wren; and that the mother be held in contempt of court for having refused to provide the father with an IRS form that he needed to claim a tax deduction for two of the parties’ minor children, as was provided in the divorce judgment.
On Febi’uary 4, 1994, the father filed a motion to have a guardian ad litem appointed for Wren. On Febi-uary 8, 1994, the trial court issued another order directing the parties to exchange full and complete financial information and setting the date of the trial for April 12, 1994. On March 2, 1994, the father filed a motion for discovei-y and a motion to shorten the time for responding to his motion for discovei-y; both motions were granted.
*307 Following an ore tenus proceeding held on April 12,1994, the trial court entered a judgment on May 19,1994, directing the father to continue to pay child support for Wren beyond the age of majority; to continue to pay child support for the parties’ three minor children in the amount of $486 per month; and to pay 76% of all uninsured prescription drug, medical, and dental expenses for the children, including an orthodontic bill incurred by the minor child John. The trial court further held that the father was $1,476 in arrears in his payment of child support and $1,030.35 in arrears in his payment of the medical expenses owed to the mother.
On June 10, 1994, the mother filed a motion to alter, amend, or vacate the judgment. This motion was denied by operation of law.
The father appeals, contending: (1) that the evidence did not support the trial court’s order to pay medical expenses in excess of the $423 that was awarded to the mother by the trial court in a prior judgment; (2) that the evidence did not support the trial court’s order to pay 75% of an orthodontic bill incurred by the minor child John; (3) that the evidence did not support the trial court’s finding that he was in arrears in his payment of child support; and (4) that the trial court erred in denying his request for a modification of his visitation with the minor child Wren.
The father first argues that the evidence did not support the trial court’s order to pay medical expenses in excess of the $423 that was awarded to the mother by the trial court in a prior judgment.
When evidence is presented ore tenus, the judgment of the trial court based on that evidence is presumed correct, and that judgment will not be reversed on appeal absent an abuse of discretion or a showing that the judgment is plainly and palpably wrong. Kelley v. Kelley, 628 So.2d 933 (Ala.Civ.App.1993). Further, if there is any evidence to support the trial court’s judgment, this court must affirm, absent plain and palpable error. J.C. v. AGape of Central Alabama, 590 So.2d 302 (Ala.Civ.App.1991).
The mother testified that the father owed her approximately $1030 for uninsured medical expenses incurred by the parties’ minor children. The mother testified that of the $1030 owed, the father owed her $423 from a prior judgment and $700 for additional medi- ■ cal expenses incurred by the parties’ minor children, less $93 paid by the father. The record reflects that the father failed to present any evidence contradicting the mother’s approximation of the medical expenses owed by him.
The father testified that he had not paid all of his share of the medical expenses incurred by the minor children. At the trial, the father submitted a handwritten document, designated “Defendant’s Exhibit Two,” showing the medical expenses that the mother alleged that he owed her. The document revealed that the father still owed the mother $423 for medical expenses that the trial court had ordered him to pay on November 4, 1992; that on January 1, 1994, he had received a bill from the mother requesting that he pay $93.75, his share of a prescription drug expense; that on February 12, 1994, the father paid the mother for the $93.75 drug expense; and that on April 9, 1994, he had received additional medical bills from the mother, which he had not paid.
After a careful review of the record, we conclude that there was evidence to support the award of medical expenses in excess of the $423 awarded in a prior judgment. Thus, we conclude that the trial court did not abuse its discretion in ordering the father to pay the mother for medical expenses incurred by the parties’ minor children in excess of $423.
Second, the father contends that the evidence did not support-the trial court’s judgment, which ordered him to pay 75% of an orthodontic bill incurred by the parties’ minor child John. Specifically, the father argues that the mother did not raise the issue of the orthodontic expense in her rule nisi petition; that the issue of the orthodontic expense was tried without his express or implied consent; and that there is no eviden-tiary basis to support such an award.
When an issue not raised in the pleadings is “tried by express or implied consent of the parties,” the pleadings may be *308 amended “to conform to the evidence.” Rule 15(b), Ala.R.Civ.P.; see Jackson v. Weaver, 516 So.2d 702 (Ala.Civ.App.1987). Whether the pleadings are to be deemed amended in order to conform to the evidence presented and whether an issue has been tried by “express or implied consent of the parties,” within the meaning of Rule 15(b), are matters within the discretion of the trial court. McCollum v. Reeves, 521 So.2d 13 (Ala.1987). The trial court’s rulings on those questions will not be reversed on appeal absent an abuse of that discretion. Id.
The father first argues that the mother did not raise the payment of the orthodontic bill as an issue in her rule nisi petition and that the issue of the bill was tried without his express or implied consent. At the trial, the mother sought to introduce evidence concerning the orthodontic bill, which she alleged that the father had an obligation to pay 75% of. The mother’s attorney conceded at the trial that the mother had not filed a pleading specifically raising the payment of the orthodontic bill as an issue. However, the mother did allege in her rule nisi petition that the father had refused to comply with the divorce judgment ordering him to pay 75% of the minor children’s dental expenses. Therefore, we must conclude that the issue of the orthodontic expense was properly before the trial court and that the issue was reviewable by the trial court.
The father also argues that there is no evidentiary basis to support the trial court’s judgment ordering him to pay 75% of the orthodontic bill. The testimony of the parties reveals that in the divorce judgment the father was ordered to pay 75% of all the dental expenses of the parties’ minor children not covered by insurance. The record does not reveal whether the judgment ordering the father to pay all the dental expenses excluded orthodontic services or was conditioned upon such services being reasonable and necessary. Thus, we conclude that there was evidence to support the trial court’s judgment as to this issue. See Nelson v. Nelson, 421 So.2d 120 (Ala.Civ.App.1982).
Third, the father contends that the evidence did not support the trial court’s judgment finding him in arrears in his payment of child support.
When a trial court receives evidence ore tenus in a case involving a child support arrearage, its judgment is presumed correct and will not be reversed on appeal unless the judgment is plainly and palpably wrong. Rubrigi v. Rubrigi, 630 So.2d 67 (Ala.Civ.App.1993). The determination of an amount of child support arrearage and the disposition thereof is largely a matter left to the sound discretion of the trial court. Id.
The father testified that he was not aware of any arrearage that he owed for child support. The father testified that in April 1992, his child support obligation was reduced from $486 to $300 by an order of the trial court, but that following a hearing in October 1992, which he alleged he had no notice of, his child support obligation was again increased to $486. The father further testified that every month since the date that his child support obligation had been increased again to $486, he has paid that amount.
The mother testified that the father was in arrears in his payment of child support. The mother testified that in its April 1992 order, the trial court reduced the father’s child support obligation from $486 to $300 and found the father $372 in arrears in payment of child support.
At the trial, the mother submitted a document that showed the father’s child support payment history. The document revealed that in March 1992, the father had failed to pay the mother any child support, which would have put him $486 in arrears. The document also showed that, in April 1992, after the father’s child support obligation had been reduced to $300 and he had been found $372 in arrears, the father paid child support in the amount of $350 from May 1992 to November 1992. We presume that the additional $50 the father paid from May 1992 to November 1992 was payment toward the $372 arrearage. The document further revealed that after the father’s child support obligation was again increased to $486 following the October 1992 hearing, he made child support payments of $243 to the mother approximately twice a month, beginning in De *309 cember 1992. Further, the document revealed that at the time of the trial, the father had not made a payment of child support for April 1994.
The trial court determined that the father was $1,476 in arrears in his payment of child support through the date of the trial, even though the mother had alleged in her rule nisi petition that the father was only $1,108 in arrears. Consequently, after a careful review of the record, we conclude that at the most, the total amount of arrearage that the father could owe is $994. This arrearage total would include the $486 unpaid March 1992 child support payment; the $22 that had still remained owing on the $372 arrear-age set by the trial court in April 1992; and the $486 child support payment for April 1994. The trial court gave no indication in its judgment of how it determined the amount of the arrearage, and there is no evidence to support its determination. Therefore, we hold that the trial court erred in finding the father $1,476 in arrears in his payment of child support.
Fourth, the father contends that the trial court erred in denying his request for a modification of his visitation with the minor child Wren.
The determination of visitation rights for the noncustodial parent rests within the sound discretion of the trial court, and its ruling on that matter will not be reversed on appeal absent an abuse of that discretion. Ladewig v. Moxley, 589 So.2d 738 (Ala.Civ.App.1991). In exercising its discretion in awarding visitation rights, the trial court’s primary consideration must be the best interests and welfare of the child. McLean v. McLean, 628 So.2d 672 (Ala.Civ.App.1993). Each case must be decided on its own facts and the personalities involved. Durham v. Heck, 479 So.2d 1292 (Ala.Civ.App.1985).
The father testified that he had requested an additional month of visitation with Wren to allow her the opportunity to participate in the vocational programs available in Birmingham, where the father lived. The father testified that while Wren was in her mother’s custody, she spent the majority of her time babysitting, and that he believed the only way for her to have the chance to secure vocational training would be through a court order.
Mr. Terry Newman, the assistant special education supervisor for the Baldwin County Board of Education, testified that Wren was about to begin her second year of a two-year, highly structured vocational training program in Baldwin County for handicapped and nonhandicapped youth. Newman stated that after Wren completed the vocational program, her teacher would assist her in a variety of ways, including finding employment for her. Newman also testified that as the assistant special education supervisor, he supervised “all programs for the mentally retarded [and] disabled,” and that he was familiar with the Baldwin County facilities as well as the other vocational facilities throughout Alabama. However, there was no testimony offered at the trial by Newman to suggest that the vocational facilities located in Birmingham had more extensive programs available than did the vocational facilities located in Baldwin County.
The mother testified that she did not know whether she could work with the father in terms of securing vocational placement for Wren, because she and the father had had problems communicating with each other since the divorce. The mother further testified that before she would allow Wren to attend a vocational facility located in Birmingham, she would have to discuss it with Wren and would have to wait until Wren graduated from high school.
Wren was in vocational training at the time of the trial. The father failed to present any evidence indicating that the Baldwin County facilities could not adequately train Wren for future employment or that the Baldwin County facilities were less extensive than any facility located in Birmingham. Consequently, the trial court did not err or abuse its discretion in denying the father’s request for a modification of visitation. Ladewig, supra.
Based on the foregoing, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings.
*310 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
THIGPEN and YATES, JJ., concur.