WISE, Justice.
*647 The defendant below, Travelers Indemnity Company of Connecticut ("Travelers"), appeals from the Limestone Circuit Court's denial of its postjudgment motion seeking to set aside a judgment entered on a jury verdict in favor of the plaintiff below, Angela Worthington. We affirm.
Facts and Procedural History
On April 27, 2011, Worthington was a passenger in a vehicle being driven by her husband. A friend of the Worthingtons and the Worthingtons' two minor children were also passengers in the vehicle. While the Worthingtons' vehicle was stopped at a nonfunctioning traffic light, it was struck in the rear by a vehicle being operated by Camille Thomas. Worthington and the other occupants in her vehicle were injured as a result of the accident.
At the time of the accident, the company Worthington's husband owned had a comprehensive insurance policy with Travelers that included uninsured-motorist ("UM") and underinsured-motorist ("UIM") coverage. The policy endorsement dealing with UM/UIM coverage provided, in pertinent part:
"C. Exclusions
"This insurance does not apply to:
"1. Any claim settled without our consent.
"However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of 'uninsured motor vehicle.'
"....
"E. Changes in Conditions
"These conditions are changed for Uninsured Motorists Coverage as follows:
"....
"2. Duties in the Event of Accident, Claim Suit or Loss is changed by adding the following:
"....
"c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the 'insured' and the insurer of a vehicle described in Paragraph b. of the definition of an 'uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner, or operator of such a vehicle described in Paragraph b. of the definition of 'uninsured motor vehicle.'
"....
"F. Additional Definitions
"As used in this endorsement:
"....
"3. 'Uninsured motor vehicle' means a land motor vehicle or 'trailer':
"....
"b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or 'trailer' for which the sum of all liability bonds or policies at the time of an 'accident' provides a limit that is less than the amount an 'insured' is legally entitled to recover as damages caused by the 'accident.' "
(Boldface type in original.)
On December 7, 2012, Worthington's husband, individually, and Worthington, individually and as mother and next friend of the two minor children, filed a complaint in *648 the Limestone Circuit Court against Thomas and Travelers.[1] The complaint included claims of negligence, wantonness, and negligence per se against Thomas. Worthington and her husband also included claims of loss of consortium. Finally, the complaint included a UM/UIM claim against Travelers.
On January 18, 2013, Travelers filed its answer to the complaint. In its answer, Travelers set forth affirmative defenses, but it did not set forth any policy-based defenses.
On October 28, 2014, Worthington's counsel notified Travelers' counsel that Worthington and Thomas had reached a proposed agreement to resolve Worthington's claims against Thomas for $56,250, plus mediation costs and filing fees. Travelers advised Worthington of its intent to maintain its rights under Lambert v. State Farm Mutual Automobile Insurance Co., 576 So.2d 160 (Ala. 1991), and advanced the amount of the proposed settlement to Worthington; Thomas was not released, and the action therefore proceeded with her remaining as a defendant.
On July 29, 2015, Worthington filed a motion for a partial summary judgment as to her negligence claim against Thomas.
Subsequently, counsel for Worthington sent a letter to counsel for Thomas that was dated August 7, 2015, that stated:
"This letter will confirm that my client has authorized me to reject your offer to settle this case for $85,000. Please advise your insured Mrs. Thomas that in the event there is a verdict in excess of $100,000, we intend to execute on some of her assets even though there is a substantial underinsured motorist policy available. Your client, the insured, should be advised that we have offered to resolve this case against her for the policy limits of $100,000. I strongly encourage you to alert Mrs. Thomas to that fact so she might seek independent counsel in her dealings with Allstate. In the event of a verdict in excess of $100,000 it is the Plaintiff's right and option to satisfy that judgment in whatever ways we deem lawful and appropriate. That would include executing on any bank accounts, personal property or other assets owned by the insured. Of course that will not be necessary if Allstate will simply tender the policy limits.
"This letter is being written so there is no misunderstanding or future controversy over Allstate's action in this case. While I do not enjoy executing upon the assets of an individual, I believe that Allstate has not acted in good faith in working to resolve this claim. As a result, the personal property and assets of its insured are being exposed to the possibility of a substantial verdict, and I believe Allstate should be liable for any excess verdict.
"My client's offer to accept Allstate's policy limits while preserving its underinsured motorist claim shall expire August 10th, 2015 at 4:00 p.m. central standard time. Should you have any questions or need assistance please do not hesitate to call."
On August 10, 2015, counsel for Thomas contacted counsel for Travelers and informed him that Worthington had entered into a settlement agreement with Thomas's insurer, Allstate. The agreement provided that Worthington would accept $95,000 in exchange for Worthington's agreement to dismiss Thomas from the lawsuit with prejudice. At 11:13 a.m. on August 10, *649 2015, counsel for Worthington filed a letter informing the trial court that Worthington and Thomas had reached a pro tanto settlement and that the case would proceed as a UIM claim against Travelers. The letter also addressed scheduling issues that had arisen due to the death of the mother of one of the witnesses. In addressing scheduling, counsel for Worthington stated that, because a response to Worthington's motion for a partial summary judgment had not been filed, he assumed that liability would not be in question and that the only issue would be damages under the UIM policy.
At 4:28 p.m. on August 10, 2015, Worthington filed a motion in limine. Among other things, she sought to exclude any evidence, mention, reference, or attempt to introduce evidence of the settlement between Worthington and Thomas. In her motion, Worthington argued:
"The settlement between [Worthington] and Ms. Thomas is completely irrelevant to Travelers' liability, and it is not admissible. Evidence must be excluded under Ala. R. Evid. 403 if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' Evidence of the settlement is inadmissible because it has nothing to do with the issue before this Court, and it will only serve to confuse the jury."
Travelers did not respond to the motion in limine. The record does not reflect a ruling by the trial court on the motion. In fact, the notation on the case-action-summary sheet includes an entry on August 13, 2015, that states: "C002-IN LIMINE/NO ACTION." However, Travelers asserts that it is undisputed that the trial court granted the motion in limine.
The case was called for trial at 9:00 a.m. on August 11, 2015. Travelers did not raise any arguments regarding the settlement agreement between Worthington and Thomas. Additionally, it never asserted that Worthington had forfeited her coverage under the policy by entering into the settlement agreement with Thomas without providing Travelers notice of the settlement and did not move to amend its answer to include a forfeiture-of-coverage defense. Subsequently, the trial court conducted voir dire, the jury was empaneled, and the trial was then recessed for the day at 2:00 p.m.
At 8:44 a.m. on August 12, 2015, Worthington and Thomas filed a "Stipulation and Agreement to Dismiss Fewer Than All Defendants" in which they represented that "they have resolved the differences between themselves and agree for and request the Court to dismiss all of said plaintiff's claims against said defendant with prejudice. It is expressly understood that the plaintiff's claims as to remaining defendant, Travelers Indemnity Company of Connecticut, remain active and pending." The trial court subsequently entered an order dismissing Worthington's claims against Thomas with prejudice and dismissing Thomas from the action.[2] Travelers did not respond to this motion or object to Thomas's dismissal.
The trial of this case resumed at 9:00 a.m. on August 12, 2015. Again, Travelers did not raise any argument that Worthington had forfeited her UIM coverage by settling her claims against Thomas without first complying with the procedures set out in Lambert and in the UIM policy. In fact, after the trial court gave the jury its preliminary *650 instructions, the following occurred during a bench conference:
"[DEFENSE COUNSEL]: Your Honor, yesterday afternoon we talked about the policy and the payment and we had represented to the Court that we were not going to contest that the policy was in force and effect at the time. And it's my understanding that [Worthington's counsel] is going to at some point read a portion of the policy to the jury and I would just object to that on the record because it's not relevant.
"THE COURT: If there's no dispute about the policy being in question and covered, I wouldn't get into the details of it would be my thinking. I agree with that. Tell me what y'all's thoughts are.
"[WORTHINGTON'S COUNSEL]: My thought is this: First of all, if it's an exhibit that goes into evidence, I think we have a right to refer to it. I think that's first. So if the policy comes into evidence, and I think we have the right to offer it into evidence, then I think any kind of exhibits that's there we've got a right to refer to.
"But secondly, and importantly, this is a contract entered into between Travelers and this family. She has a right I think to refer and point out to the jury these are the provisions of the contract, you know, we bought this contract and this is what covers it. A lot of the jurors in-prospective jurors had questions about, you know, was this covered by the policy whatnot and we simply want to early in her testimony offer the contract, show she paid for it, and refer them to the uninsured motorists portion of the policy.
"And our thought is that if it's an exhibit, and certainly, the contract should be able to be offered into evidence and if it's an exhibit that's admitted into evidence, we ought to have a right to refer to it. I don't expect to belabor it.
"THE COURT: My only thought is certainly you're going to do all [that] if you're trying to prove was there a contract in force and effect, but if the defendant is stipulating to the fact that there is a contract in force and effect and she's covered by this and we acknowledge that she's covered, to me, you know, that's my concern.
"[DEFENSE COUNSEL]: Yes, sir. I don't object to the introduction of the contract into evidence in the first place.
"[WORTHINGTON'S COUNSEL]: Well, then I'd like-I just would like to go further to say that this type of-I'd like for them to admit if that's-first of all, I'll do whatever the Court obviously instructs.
"THE COURT: I just want to, you know, I don't want to overdo something. I want to be very clear about it. He's agreeing to it and is there any need, is my only thought.
"[WORTHINGTON'S COUNSEL]: And that's fine so long as we can stand up and say there is absolutely no dispute by Travelers that this is a type of policy that covers exactly what we're standing here for. Now, if they're-
"THE COURT: I thought that's where we were yesterday and you're good with that.
"[DEFENSE COUNSEL]: Yes, sir. There's no question that policy was-
"THE COURT: I tend to agree. I think it's almost a stipulation.
"[WORTHINGTON'S COUNSEL]: That's fine.
"THE COURT: Are y'all good with that?
"[WORTHINGTON'S COUNSEL]: Yes, sir.
*651 "THE COURT: All right. We'll do it that way."
Throughout the trial, Worthington and Travelers stated that the only issue before the jury was the amount of damages Worthington was entitled to recover as a result of the accident. In its opening statement, defense counsel stated:
"Ladies and gentlemen, the essence of the case and why you're here is basically this: We had a number, a monetary figure. They are correct in saying we don't dispute that Mrs. Worthington was injured, we don't dispute it wasn't her fault. Generally speaking, cases come before juries in two situations in car wrecks like this. One is that there's a dispute about whose fault it is. A classic situation of intersection, red light, each person says the other had the green light. That's where you dispute liability.
"The other kind is when you have a dispute over how much the case is worth and that's what we're here about today. I'm not going to tell you that Mrs. Worthington is not injured. If that's not true, I'm not going to tell you it was not, it was her fault. It wasn't her fault. That's not true. Mrs. Thomas rear-ended her, and she hurt her knees. That will be all correct. We don't dispute that.
"What the disagreement is about is what the case is worth. And Mr. and Mrs. Worthington did have a policy of insurance with Travelers, what's called underinsured motorist coverage. And I'm sure you've noticed Mrs. Thomas is not here today because that part of the case has been resolved. And they told you you're not to concern yourself with how much the policy is with us, you're not to concern yourself with how much the policy was with Mrs. Thomas. The dispute is what damages.
"At the end of the day, end of the trial, they are going to come in here and ask you for money and say Mrs. Worthington deserves X amount of money. Guess what. I'm going to tell you the same thing. Tell you she deserves money, she needs to be compensated. The issue is going to be their numbers will be different from mine for my opinion differs from theirs on what the case is worth. Nobody is here saying she's not hurt. Nobody is saying here that it was her fault."
(Emphasis added.)
Before the first witness testified, the trial court instructed the jury as follows:
"All right. Ladies and gentlemen of the jury, we're now ready to call the first witness. Prior to doing that, there's been a stipulation that I want to clarify for the record. I think it was pretty well brought out in opening statements, but I want to clarify that. There is a stipulation that there is a policy in force and effect from Travelers, the defendant, called underinsured or uninsured motorist coverage. That policy is in place. The plaintiff is protected by that policy and the injuries in question will be covered by that policy. There's no question about that. There was some questions with regard to getting the policy in evidence. My ruling is that it's irrelevant. They've stipulated that the policy is in force and effect and that's the ruling of the Court, okay. Everybody clear? No question about that."
(Emphasis added.)
Worthington testified at trial and presented the testimony of four additional witnesses. Travelers did not call any witnesses on its behalf. Additionally, Travelers did not move for a judgment as a matter of law at the close of Worthington's evidence or at the close of all the evidence.
During the defense's closing argument, defense counsel stated:
*652 "And if you remember when I talked to you in the opening statements, that's what I told you you were going to have to do (inaudible) to ask for a number. Because like they have already said and what I've already told you, there's no dispute about the accident, there's no dispute that Mrs. Worthington got hurt. We just have a dispute about what the value of the case is.
"And I'm going to tell you right now, you should award Mrs. Worthington damages [for] the medical expenses. That should be part of your verdict. Absolutely. Because it wouldn't be fair for her not to be compensated for something she has to pay for already. So that's certainly something you should include and you probably should include that in an amount for pain and suffering because there's no dispute that her knees still hurt and that's been all through her life and it's affected her life. And Judge will tell you there's no set standard for pain and suffering. That's something you're giving a judgment from twelve people."
(Emphasis added.) Finally, in its jury charge, the trial court instructed the jury as follows:
"The parties have stipulated in this case that the other driver, Camille Wilson Thomas, neglectfully drove a vehicle causing it to rear-end the vehicle that the plaintiff was a passenger in and caused harm to this plaintiff. The plaintiff, Angela Worthington, says that the other driver, Camille Wilson Thomas, was an underinsured motorist. Because the other driver, Camille Wilson Thomas, did not have enough liability insurance coverage, the plaintiff, Angela Worthington, says that she can recover under her own policy, Travelers, for these underinsured benefit claims.
"The parties have stipulated that the plaintiff had such as a policy of insurance with Travelers, that it was in effect on the date in question and that the policy had underinsured motorist benefit coverage. The parties further stipulate that the other driver had liability insurance. The parties further stipulate that the other driver, Camille Wilson Thomas, was negligent in the operation of her vehicle which caused the wreck and caused damage to plaintiff. The parties further stipulate that the other driver's negligent conduct did cause the plaintiff her injury.
"It is for you, the jury, to find for this plaintiff and then to determine how much money to be awarded to her for the harm that's been caused by the other driver, Camille Wilson Thomas. When deciding how much to award, the amount of the other driver's liability insurance and the amount of the plaintiff's underinsured motorist coverage are not important. The determination and the allocation for this will be handled by this Court after we receive your verdict. The controversy for your determination as the jury is simply the appropriate amount of damages to be awarded to this plaintiff."
(Emphasis added.)
On August 13, 2015, the jury returned a verdict in favor of Worthington and against Travelers. The jury assessed Worthington's damages at $1,100,000. On that same day, the trial court entered its judgment on the jury's verdict; found that Thomas had previously paid Worthington "$100,000 to fully resolve [Worthington's] claims against [Thomas]" and that Travelers was entitled to a credit in that amount; and entered a judgment in favor of Worthington and against Travelers for the net amount of $1,000,000.
*653 On September 9, 2015, Travelers filed a "Motion for Judgment to Alter, Amend, or Vacate Judgment, or, Alternatively, Motion for New Trial, or Motion for Remittitur." In its motion, Travelers argued:
"The judgment in this case is due to be vacated. Alabama law clearly provides that a plaintiff seeking underinsured motorist (UIM) benefits from her insurance carrier must comply with the notice requirements set out by the Alabama Supreme Court in Lambert v. State Farm Mutual Automobile Insurance Co., [ 576] So.2d 160 (Ala. 1991). A plaintiff who fails to do so forfeits her right to any UIM coverage under the insurance policy. In the present case, Plaintiff entered into a settlement with the tortfeasor less than twenty-four hours before her case against Travelers for UIM coverage was set to begin. Plaintiff did so without disclosing the settlement to Travelers until after the fact and without giving Travelers an opportunity to exercise its rights under Lambert. In taking this action in contravention of Alabama law, Plaintiff not only violated Lambert but she also violated the clear terms of the Travelers policy. As a result, this Court's judgment against Travelers is due to be vacated and, instead, judgment is due to be entered in favor of Travelers."
Travelers also argued:
"In the present case, Plaintiff's direct violation and breach of the conditions of the UIM policy and Alabama law warrant that the August 13, 2015 Judgment be vacated. The August 11-13, 2015 trial of this action concerned the amount of damages to which Plaintiff might be entitled as a result of the April 27, 2011 automobile accident. Although the jury returned a verdict in Plaintiff's favor, Plaintiff forfeited all coverage under the Travelers policy when, on the eve of trial, she settled and released the tortfeasor before notifying Travelers of the proposed agreement and without providing Travelers with the opportunity to maintain the rights to which it is entitled under Alabama law. Accordingly, the August 13, 2015 Judgment is inappropriate and cannot be enforced.
"....
"Under Alabama law and the express provisions of the policy, Plaintiff was required to provide Travelers with thirty (30) days notice to consider the proposed settlement and determine whether it would front the settlement to maintain its rights, including the right to keep the tortfeasor in the case. Here, it is undisputed that Plaintiff's release of all claims against the tortfeasor occurred within forty-eight hours of her agreement to settle with the tortfeasor. Under controlling Alabama law, Plaintiff's blatant failure to comply with the Lambert requirements and the terms of the Travelers policy results in her forfeiture of any and all rights to UIM benefits under the Travelers Policy. Accordingly, the August 13, 2015 Judgment is unenforceable and is due to be vacated.
"....
"Here, a new trial is warranted because the trial of Plaintiff's UIM claim against Travelers was inappropriate. As set forth more fully above, Plaintiff violated the Lambert requirements by settling her claims against the tortfeasor before notifying Travelers of the proposed agreement and without providing Travelers a reasonable time in which to consider the proposed settlement and its position with respect to same. Thus, the rights granted to Travelers under well-settled Alabama law were violated by the settlement that resulted in the dismissal of the tortfeasor on the eve of trial.
*654 "....
"Thus, should this Court decline to vacate the August 13, 2015 Judgment, Travelers is entitled to a new trial so that the rights guaranteed under Lambert can be enforced. Of course, those rights can only be maintained in full if the order dismissing the tortfeasor is vacated. Accordingly, the August 12, 2015 Judgment whereby the tortfeasor was released is also due to be reversed, so as to permit Travelers a reasonable time to consider the proposed settlement and advise the parties of its position, as set forth in Lambert, supra."[3]
In a response in opposition to Travelers' postjudgment motion, Worthington asserted that Travelers had "waived any defense to the applicability and enforceability of the uninsured motorist contract at issue." Specifically, she alleged that Travelers had "stipulated at trial to the existence of uninsured motorist contract and its applicability and enforceability to the wreck at issue in this case." She also pointed out that, at trial, Travelers objected to the introduction of the UIM policy and admitted that, under the policy, it was liable for any verdict in excess of the limits of Thomas's policy. Worthington asserted that the doctrine of waiver would preclude Travelers from raising the arguments asserted in its postjudgment motion; that Travelers should be estopped from asserting any policy defense; and that the doctrine of issue preclusion would prohibit Travelers from contesting the enforceability and applicability of the UIM coverage. She also asserted that Travelers should be barred from raising this forfeiture-of-coverage defense because it had failed to plead it as an affirmative defense or to assert a counterclaim alleging breach of contract against Worthington. Worthington asserted that Travelers' attempt to avoid insurance coverage at that late date would be precluded under the doctrines of res judicata and collateral estoppel. She further argued:
"Defendant Travelers stipulated to the enforceability, applicability, and the fact that any jury verdict in excess of the tortfeasor's policy limits would be covered under the subject uninsured motorist policy, up to its limits of $1 million. Defendant Travelers cannot now avoid its stipulation and re-litigate issues that have been previously stipulated."
In their filings, the parties indicate that the trial court conducted a hearing on Travelers' postjudgment motion. However, the record on appeal does not include a transcript of that hearing. On November 30, 2015, the trial court entered an order in which it denied Travelers' postjudgment motion. This appeal followed.
Discussion
A.
Travelers argues that the record on appeal was improperly supplemented with a transcript of the trial proceedings in this case. In its brief to this Court, it contends:
"As this Court recognized, the record on appeal may only be supplemented to 'include matters which were in evidence at the trial level and inadvertently omitted from the record on appeal.' Richburg v. Cromwell, 428 So.2d 621, 622 (Ala. 1983). Alabama Rules of Appellate Procedure 10(f) 'was never intended to allow a matter to be included in the record on *655 appeal which was not before the trial court.' Richburg, 428 So.2d at 622. Thus, supplementation of the record on appeal with the trial transcript, which was never submitted by any party to the trial court, constituted an abuse of discretion."
(Travelers' brief, at p. 37.) Travelers goes on to argue that, because Worthington did not submit a transcript of the trial as evidence during the postjudgment proceedings, this Court cannot consider the trial transcript in ruling on this appeal.[4]
None of the cases cited by Travelers in support of its argument in this regard discuss supplementing the record on appeal with a transcript of the trial proceedings from the case that is on appeal; rather, they address only the general principles of law that Rule 10(f), Ala. R. App. P., does not allow the record on appeal to be supplemented with evidence that was not before the trial court and that this Court cannot consider evidence that was not before the trial court. However, in the case, the trial judge who ruled on the postjudgment motion also presided over the trial. Thus, the trial judge had personal knowledge of what transpired during the trial. Therefore, this Court's consideration of the trial transcript would not constitute consideration of matters that were not before the trial court. Additionally, Travelers has not presented to this Court any authority to support its specific assertion that consideration of the trial transcript under the facts in this case would actually constitute consideration of matters or evidence that was not before the trial court.
" ' "It is well established that general propositions of law are not considered 'supporting authority' for purposes of Rule 28[, Ala. R. App. P.]. Ex parte Riley, 464 So.2d 92 (Ala. 1985)." S.B. v. Saint James Sch., 959 So.2d 72, 89 (Ala. 2006). This Court will not "create legal arguments for a party based on undelineated general propositions unsupported by authority or argument." Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala. 1992). Further, it is well settled that " '[w]here an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant.' " Spradlin v. Birmingham Airport Auth., 613 So.2d 347, 348 (Ala. 1993) (quoting Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala. 1990) ).'
" Allsopp v. Bolding, 86 So.3d 952, 960 (Ala. 2011)."
Harris v. Owens, 105 So.3d 430, 436 (Ala. 2012). Because the citations to authority included in Travelers' argument stand for only general propositions of law, its argument that Worthington should not have been allowed to supplement the record with a transcript of the trial proceedings *656 does not comply with Rule 28(a)(10), Ala. R. App. P., and we will not consider it.
B.
Travelers also argues that the trial court erred in denying its postjudgment motion to vacate its judgment in favor of Worthington. (Issues I and II in Travelers' brief.) Specifically, it contends that, when Worthington entered into the settlement agreement with Thomas without first complying with the Lambert framework, she automatically forfeited her UIM coverage and the trial court could not have entered a judgment in her favor.
In Lambert, this Court addressed the procedure to be applied in a case in which the UM/UIM policy includes a consent-to-settle clause:
"In this opinion, we set out the procedure that should be followed in every case in which the rights of the insured and the underinsured motorist insurance carrier may conflict.
"Necessarily, any procedure must take into consideration the facts and circumstances of each individual case, but the following general rules should apply:
"(1) The insured, or the insured's counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage.
"(2) If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
"(3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.
"(4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.
"(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tort-feasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against *657 the tort-feasor or the tort-feasor's insurer.
"(6) If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer.
"These general guidelines should be applied with the understanding that the purpose of consent-to-settle clauses in the uninsured/underinsured motorist insurance context is to protect the underinsured motorist insurance carrier's subrogation rights against the tort-feasor, as well as to protect the carrier against the possibility of collusion between its insured and the tortfeasor's liability insurer at the carrier's expense.
"....
"This Court stated in Lowe v. Nationwide Ins. Co., 521 So.2d 1309 (Ala. 1988), that there are three primary concerns in an insurance claim involving underinsured motorist insurance coverage:
" '1) that of protecting the right of the [underinsured motorist insurance carrier] to know of, and participate in, the suit; 2) that of protecting the right of the insured to litigate all aspects of his claim in a single suit ...[;] and 3) that of protecting the liability phase of the trial from the introduction of extraneous and corrupting influences, namely, evidence of insurance....'
" 521 So.2d at 1309."
576 So.2d at 167-68 (emphasis added). Although Lambert addressed the general procedures to be followed with regard to settlements in such cases, it did not address the issue of when and how an insurance company must raise a defense based on the insured's failure to comply with the Lambert procedures during litigation between the company and its insured. Travelers also cites several other Alabama cases for the general proposition that "any insured who fails to comply with Lambert's notice requirements forfeits any and all rights to UIM benefits under the policy." Those cases set forth general propositions of law regarding the application of Lambert and the failure to comply with the notice requirement set forth in Lambert. Again, those cases do not address the issue of when and how an insurance company must raise a forfeiture defense during litigation with its insured.
In Tounzen v. Southern United Fire Insurance Co., 701 So.2d 1148 (Ala. Civ. App. 1997), the Court of Civil Appeals stated:
"On appeal, the Tounzens argue that the trial court erred in directing the verdict because Southern United failed to specifically plead the settlement and release of McGuire as an affirmative defense in its answer to the Tounzens' complaint. The relevant policy provision at issue states:
" 'SECTION C-UNINSURED MOTORISTS INSURANCE
" 'I. COVERAGE D-UNINSURED MOTORISTS (Damages for Bodily Injury):
" 'Exclusions: This insurance does not apply:
" '(a) to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization legally liable therefor.'
"It is undisputed that the Tounzens did not receive written consent from Southern United to settle with State Farm Insurance Company, Mc[G]uire's *658 liability insurance carrier. The settlement between the Tounzens and State Farm, when asserted by Southern United as a defense to avoid payment under its own uninsured motorist policy, is an affirmative defense. Southern United admitted at trial that the defense had occurred to it only days before trial and that it gave notice of this defense to the Tounzens and the trial court shortly before trial. It is undisputed that Southern United amended its pleadings in open court during the trial.
" Rule 8(c), Ala. R. Civ. P., provides:
" 'Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting avoidance or affirmative defense.'
"(Emphasis added.)
" Rule 8(c) provides that affirmative defenses 'shall' be raised in a responsive pleading; generally, when a party has failed to plead an affirmative defense, it is deemed to have been waived by operation of Rule 8(c). Harrell v. Pet, Inc., Bakery Div., 664 So.2d 204 (Ala. Civ. App. 1994). However, Rule 8(c) must be read in conjunction with Rule 15(b), Ala. R. Civ. P. Rule 15 provides for the automatic amendment of pleadings to allow the pleadings to conform to the evidence that has been presented at trial. Rule 15(b) is an exception to the rule that an affirmative defense is waived if it is not specifically pleaded. Mid-South Credit Collection v. McCleskey, 587 So.2d 1212 (Ala. Civ. App. 1991).
" Rule 15(b), Ala. R. Civ. P., provides in part:
" 'If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in the maintaining of his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.'
"(Emphasis supplied.)
"Under Rule 15, amendments are to be freely allowed when justice requires. Thurman v. Thurman, 454 So.2d 995 (Ala. Civ. App. 1984). Even as late as the date of trial, the trial court has the authority to allow an amendment. Robinson v. Morse, 352 So.2d 1355 (Ala. 1977). The typical Rule 15(b) case involves a situation in which a party, at trial and without objection from an opposing party, presents evidence that gives rise to an issue that was not pleaded. It has been consistently held that when issues that have not been raised in the pleadings are tried by the express or implied consent of the parties, those issues are treated in all respects as if they had been raised in the pleadings. Rule 15(b), Ala. R. Civ. P.; Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892 (Ala. 1995) ; McCollum v. Reeves, 521 So.2d 13 (Ala. 1987) ; Havard v. Havard, 652 So.2d 304 (Ala. Civ. App. 1994).
"It is within the discretion of the trial court to decide whether to grant an amendment pursuant to Rule 15, Ala. R. Civ. P.
*659 Miller v. Bell Richardson, P.A., 638 So.2d 6 (Ala. Civ. App. 1994). Only where the trial court abuses its discretion in allowing or denying a Rule 15 amendment will this court reverse. Havard v. Havard, supra.
" ' "[I]f Rule 15 is to be of any benefit to the bench, bar, and the public, the trial judges must be given discretion to allow or refuse amendments.... We state also that Rule 15 must be liberally construed by the trial judges. But, that liberality does not include a situation where the trial on the issues will be unduly delayed or the opposing party unduly prejudiced." '
" Hayes v. Payne, 523 So.2d 333, 334 (Ala. 1987) (quoting Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975) )."
701 So.2d at 1149-51 (some emphasis added).
This case presents a unique factual situation. Because Worthington did not enter into the settlement agreement with Thomas until the day before the trial was scheduled to begin, this was obviously not a situation where Travelers could have raised the affirmative defense of forfeiture of coverage in its answer. However, "even as late as the date of trial the trial court has the authority to allow an amendment." Tounzen, 701 So.2d at 1150. Thus, once Travelers learned of the settlement agreement between Worthington and Thomas, it could have sought to amend its answer to assert the defense of forfeiture of coverage, even on the date of trial; it never did so. Also, at no time before the trial started or at any time during the trial proceedings did Travelers present to the trial court its argument that Worthington had forfeited coverage by entering into the settlement agreement with Thomas. Rather, it proceeded to trial on a stipulation that UIM coverage existed and that the policy covered the claims asserted by Worthington. Travelers also conceded that Thomas was negligent; that Worthington was not at fault; and that Worthington had sustained injuries as a result of the accident. In fact, Travelers went so far as to tell the jury in closing arguments that it should return a verdict in favor of Worthington and that the only dispute was the amount of damages that should be awarded. Travelers never raised the affirmative defense that Worthington had forfeited her UIM coverage by entering into the settlement agreement without first providing notice pursuant to the procedures set forth in Lambert and in the Travelers policy during the trial. It was only after the jury had returned a verdict in favor of Worthington for $1.1 million that Travelers filed a postjudgment motion raising this defense for the first time.
In Special Assets, L.L.C. v. Chase Home Finance, L.L.C., 991 So.2d 668, 675-78 (Ala. 2007), this Court addressed a situation where the defendants raised the affirmative defense of the statute of limitations for the first time in a postjudgment motion:
"Chase Finance contends that First Properties and Special Assets did not timely raise the statute of limitations as a defense, that the trial court did not consider the merits of that defense, and that the trial court did not exceed its discretion in refusing to do so. We agree. A defense based on a statute of limitations is an affirmative defense. Rule 8(c), Ala. R. Civ. P. ' "Typically, if a party fails to plead an affirmative defense, that defense is deemed to have been waived." ' Ziade v. Koch, 952 So.2d 1072, 1075 (Ala. 2006). In its responsive pleadings, First Properties did not plead the statute of limitations as a defense. Moreover, in its materials before the entry of the summary judgments, First Properties did not assert that Chase *660 Finance's claims were barred by the statute of limitations as a defense. Instead, First Properties raised the statute of limitations as a defense for the first time when it filed its postjudgment motion under Rule 59(e), Ala. R. Civ. P. Consequently, by not pleading or asserting the affirmative defense of the statute of limitations until after the trial court had entered a summary judgment against it, First Properties waived its right to assert that defense. Giles v. Ingrum, 583 So.2d 1287, 1289 (Ala. 19[91] ).
"Chase Finance points out that in its answer Special Assets made the general statement that it 'asserts the defenses of waiver, estoppel, laches, lapse, and the applicable statutes of limitation.' However, Chase Finance also notes that, like First Properties, Special Assets made no argument regarding the statute of limitations in the materials it filed before summary judgment. Thus, Special Assets waited until it filed its postjudgment motion under Rule 59(e), Ala. R. Civ. P., to attempt to prove that Chase Finance's claims were untimely.
"In its briefs to this Court, Special Assets does not address whether its general assertion of the statute-of-limitations defense in its answer was sufficient to prevent a finding that its failure to attempt to prove the defense until its postjudgment motion constituted a waiver of the defense. Instead, Special Assets argues, as does First Properties, that this Court may review the merits of the statute-of-limitations defense because (1) the defense was asserted in postjudgment materials, and (2) First Properties and Special Assets contend, in ruling on their postjudgment motion under Rule 59(e), Ala. R. Civ. P., the trial court 'considered' the statute-of-limitations defense and rejected it on the merits.
"First Properties and Special Assets cite this Court's decision in Maxwell v. Dawkins, 974 So.2d 282 (Ala. 2006). Maxwell involved a will contest between Robert Maxwell, Jr., and Dollye Diane Dawkins. Robert sought to probate a will signed by the testator in September 2002, but Dawkins contended that the September 2002 will had been revoked in August 2004. The trial court entered an order granting Dawkins's motion for a summary judgment and holding that there had been a valid revocation of the September 2002 will. 974 So.2d at 284.
"Robert filed a 'motion to reconsider' in which he 'raised for the first time the issue whether [the testator] had, on August 25, 2004, the mental capacity to revoke his will.' 974 So.2d at 284. The trial court then entered an order amending its earlier judgment and stating specifically that ' "the testator at the time of the act of signing beneath the words of revocation possessed sufficient capacity to revoke his will." ' 974 So.2d at 284.
"On appeal to this Court, Dawkins contended that Robert had waived the issue of mental capacity and could not raise it on appeal because, she argued, 'Robert [had] not articulate[d] this argument in his summary-judgment motion, in his response opposing Dawkins's summary-judgment motion, or in his reply to Dawkins's response to his summary-judgment motion.' 974 So.2d at 286. This Court rejected Dawkins's argument, however.
"Although Robert had not timely raised the issue of mental capacity and the trial court therefore was under no obligation to consider it, 'the trial court [had] the discretion to consider the argument, and it appear[ed] to have done so.' 974 So.2d at 286. Because the trial court had amended its judgment to state specifically that the testator had the *661 mental capacity to revoke his will, the trial court had ruled on the issue, and 'Robert may challenge that ruling on appeal notwithstanding his failure to raise it before the trial court entered its judgment.' 974 So.2d at 286.
"The trial court's order denying First Properties and Special Assets' postjudgment motion in the present case states in its entirety: 'After consideration of [First Properties and Special Assets' postjudgment motion] and [Chase Finance's] response thereto, the Court concludes that the motion is due to be denied.' First Properties and Special Assets contend that the word 'consideration' in that order means that the trial court ruled on the merits of their statute-of-limitations argument in the same way the trial court in Maxwell ruled on the issue of testamentary capacity.
"We disagree. The trial court in Maxwell specifically amended its judgment to rule on the issue of capacity; thus, there was evidence that the trial court considered a new legal argument raised for the first time in a postjudgment motion. In the present case, however, the order of the trial court denying First Properties and Special Assets' postjudgment motion does not indicate why that motion was denied. Instead, the basis for its denial is not discernible from the general language used in the order.
"It is well settled that ' "this Court will affirm a judgment for any reason supported by the record that satisfies the requirements of due process." ' Hollis v. City of Brighton, 950 So.2d 300, 308-09 (Ala. 2006) (quoting Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala. 2006), and citing Taylor v. Stevenson, 820 So.2d 810, 814 (Ala. 2001) ). Chase Finance argued to the trial court that, by waiting until after the judgment to raise it, First Properties and Special Assets waived the defense of the statute of limitations. However, neither First Properties nor Special Assets argued to the trial court that it had timely raised the defense of the statute of limitations, and neither offered a reason for the delay in raising or attempting [to] prove the defense. Thus, in ruling on First Properties and Special Assets' postjudgment motion, the trial court had before it the unrebutted argument that their statute-of-limitations defense was untimely. Although the trial court had the discretion to consider the merits of the statute-of-limitations defense, there is no indication that it did so, and we will not presume to the contrary. See Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala. 1988) ('[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so.'). Consequently, First Properties and Special Assets' arguments regarding the statute of limitations do not show that the trial court erred in denying their postjudgment motion."
(Footnotes omitted.)
In its order denying Travelers' postjudgment motion, the trial court merely stated:
"Defendant Travelers Indemnity Company of Connecticut Motion for Judgment to Alter, Amend, or Vacate Judgment, Or, Alternatively, Motion for New Trial, or Motion for Remittitur is hereby Denied."
Although the filings of the parties indicate that the trial court conducted a hearing on that motion, the record before this Court does not include a transcript of that hearing. At most, a letter brief filed by Worthington in opposition to Travelers' postjudgment *662 motion includes the following statement:
"During oral argument on [Travelers'] motion, Your Honor posed a hypothetical 'threshold' issue related to Lambert. Respectfully, [Worthington] believes the threshold issue is Has Travelers preserved its right to raise any insurance policy defenses in a Motion for New Trial. "
(Boldface type in original.) There is no indication in the record that the trial court actually considered the merits of Travelers' defense that Worthington had forfeited coverage under her UIM policy. At best, the record indicates that the trial court was considering whether it should entertain the new legal argument Travelers presented in its postjudgment motion.
Travelers argues that Worthington filed a motion in limine to prevent the introduction of or any reference to the settlement; that the trial court granted that motion; and that, therefore, it could not have presented its forfeiture-of-coverage argument at trial. However, Travelers' argument in this regard is disingenuous at best. As noted previously, the record does not include any indication that the trial court actually granted the motion in limine. Even if the trial court granted the motion, however, Travelers' argument is still unavailing. Travelers never presented any argument in opposition to the motion in limine; it certainly never argued that the introduction of the settlement agreement was relevant to the issue whether Worthington had forfeited her UIM coverage by entering into that settlement. Even if the trial court did grant the motion in limine, that ruling did not prevent Travelers from moving for leave to amend its answer to add the affirmative defense of forfeiture of coverage or from presenting its argument that Worthington had forfeited coverage to the trial court outside the presence of the jury.
Travelers also relies upon this Court's decisions in Allstate Insurance Co. v. Beavers, 611 So.2d 348 (Ala. 1992), and Downey v. Travelers Property Casualty Insurance Co., 74 So.3d 952 (Ala. 2011), to support its assertion that Worthington's violation of the procedures in Lambert and the conditions set out in the Travelers policy "resulted in an immediate and complete forfeiture of all of her rights to UIM coverage under Alabama law" and its conclusion that "Worthington irrevocably forfeited her rights to UIM coverage before the trial of the case ever began, and Worthington cannot now restore that coverage by pointing to any post-settlement conduct by Travelers." (Travelers' brief, at p. 32.) Although the decisions in Allstate and Downey address the general proposition that an insured waives or forfeits the right to UIM insurance benefits by failing to comply with the notice requirements of Lambert, those cases do not address the proper method by which a UIM carrier should assert a forfeiture-of-coverage defense in cases where the insured has failed to comply with those notice requirements. In fact, Allstate and Downey both involved situations where the insurance companies had raised their forfeiture defenses before a judgment was entered. Those cases definitely do not suggest that a UIM carrier can have pretrial knowledge that its insured has settled claims against the tortfeasor without first providing it with notice; proceed to trial as the sole remaining defendant; stipulate to the existence of UIM coverage and the tortfeasor's liability; inform the jury that it should return a verdict for damages in favor of the insured; argue that the only issue for the jury is the amount of those damages; and then, after the jury returns a verdict in favor of the insured, *663 argue for the first time in a postjudgment motion that the insured has waived or forfeited her UIM coverage. As this Court has noted:
"This Court has assiduously applied the rule that a party may not wait until after a verdict has been rendered before objecting to a procedural defect, if the objection could have been raised in a timely manner. See, e.g., Ritchey v. State, 293 Ala. 265, 302 So.2d 83 (1974) ; Tucker v. Tucker, 248 Ala. 602, 28 So.2d 637 (1946) ; Geter v. Central Coal Co., 149 Ala. 578, 43 So. 367 (1907) ; Hall v. Hall, 421 So.2d 1270 (Ala. Civ. App. 1982). For example, in Davis v. Davis, 474 So.2d 654, 656 (Ala. 1985), this Court held that '[t]he law does not permit a litigant with knowledge of previously unserved pleadings and documents to go to trial, gamble on a favorable outcome at the hands of the jury, and then, if he loses, raise this deficiency for the first time [in] a post-trial motion for a new trial.' This rule is necessary to ensure fairness at trial, and it supports the public interest in judicial economy."
Ex parte Eaton, 675 So.2d 1300, 1301-02 (Ala. 1996). In this case, Travelers had knowledge of its claim that Worthington had forfeited her UIM coverage, but it went to trial and "gamble[d] on a favorable outcome at the hands of the jury." 675 So.2d at 1302. However, after it lost, it raised its forfeiture-of-coverage defense for the first time in postjudgment motion. Such conduct flies in the face of the concept of fairness at trial and undermines the public's interest in judicial economy.
Moreover,
" ' "[a] stipulation is a judicial admission, dispensing with proof, recognized and enforced by the courts as a substitute for legal proof." ' K.D. v. Jefferson Cnty. Dep't of Human Res., 88 So.3d 893, 896 (Ala. Civ. App. 2012) (quoting Spradley v. State, 414 So.2d 170, 172 (Ala. Crim. App. 1982) ). The trial court's conclusion that the parties had stipulated that Patterson's injury arose out of and in the course of her employment dispensed with the necessity of proving medical causation, as the parties implicitly recognized in their stipulation that '[t]he only issue to be decided by the court in this matter is the nature and extent of permanent disability benefits, if any, owed to [Patterson].' A stipulation is a ' "voluntary agreement between opposing counsel concerning disposition of some relevant point so as to obviate [the] need for proof or to narrow [the] range of litigable issues." ' Evans v. Alabama Prof'l Health Consultants, Inc., 474 So.2d 86, 88 (Ala. 1985) (quoting Black's Law Dictionary 1269 (rev. 5th ed. 1979), quoting in turn Arrington v. State, 233 So.2d 634, 636 (Fla. 1970) ). 'Parties may agree to try their case upon a theory of their choosing and their agreements will be binding. Reese Funeral Home v. Kennedy Electric Co., 370 So.2d 1030 (Ala. Civ. App. 1979) ; Rule 47, A[la]. R. A[pp]. P.' Cotton v. Terry, 495 So.2d 1077, 1080 (Ala. 1986). ' "[O]ne who has stipulated to certain facts is foreclosed from repudiating them on appeal." ' K.D. v. Jefferson Cnty. Dep't of Human Res., 88 So.3d at 897 (quoting Spradley, 414 So.2d at 172 ). See also Vann Express, Inc. v. Phillips, 539 So.2d 296, 298 (Ala. Civ. App. 1988)."
Stericycle, Inc. v. Patterson, 161 So.3d 1170, 1175-76 (Ala. Civ. App. 2013). Travelers had knowledge of the settlement agreement before the trial in this case began. Despite having that knowledge, Travelers stipulated during the trial that the Travelers policy with the UIM provision was in place; that Worthington was protected by that policy; and that Worthington's *664 injuries would be covered by that policy. Thus, Travelers cannot now repudiate that stipulation based on facts known to it before it entered into that stipulation.
The record does not indicate that the trial court considered the merits of Travelers' forfeiture-of-coverage defense, and we will not presume that it did so. Additionally, Travelers has not presented any argument to establish that the trial court exceeded its discretion in not considering the merits of its forfeiture-of-coverage defense. For these reasons, Travelers has not established that the trial court erred in denying its postjudgment motion, see Special Assets, 991 So.2d at 677-78, and we affirm the trial court's judgment.
AFFIRMED.
Stuart, C.J., and Bolin, Parker, Main, and Bryan, JJ., concur.
Murdock, J., concurs in the rationale in part and concurs in the result.
Shaw, J., concurs in the result.
Sellers, J., dissents.
MURDOCK, Justice (concurring in the rationale in part and concurring in the result).
I agree with the main opinion that Travelers Indemnity Company of Connecticut waived its Lambert [5] position by failing to assert that position to the trial court; however, I would not consider Travelers' failure to have amended its answer as part of the calculus for this conclusion. In the context of the compressed, eve-of-trial and during-trial timeline in this case, I agree with the main opinion that our cases
"do not suggest that a UIM carrier can have pretrial knowledge that its insured has settled claims against the tortfeasor without first providing it with notice; proceed to trial as the sole remaining defendant; stipulate to the existence of UIM coverage and the tortfeasor's liability; inform the jury that it should return a verdict for damages in favor of the insured; argue that the only issue for the jury is the amount of those damages; and then, after the jury returns a verdict in favor of the insured, argue for the first time in a postjudgment motion that the insured has waived or forfeited her UIM coverage."
252 So.3d at 662-63.

During a hearing on August 11, 2015, the parties stipulated that the claims of Worthington's husband and minor children were dismissed with prejudice, leaving as a plaintiff only Worthington in her individual capacity.

The trial court dated the order August 12, 2015, but it was not electronically filed until August 18, 2015. See Rule 58(c), Ala. R. Civ. P.

In its postjudgment motion, Travelers also argued that, if the trial court determined that it was not entitled to a new trial with regard to its Lambert claim, it was "entitled to a new trial based on the excessiveness of the damages, or, alternatively, remittitur of the jury's award." However, it does not raise its arguments regarding the excessiveness of the damages award on appeal. Therefore, Travelers has abandoned any argument that the damages award is excessive. See Alfa Life Ins. Corp. v. Jackson, 906 So.2d 143 (Ala. 2005).

This is not the first time Travelers has challenged the trial court's granting of the motion to supplement the record on appeal in this Court. On May 20, 2016, Travelers filed a petition for a writ of mandamus in which it asked this Court to order the trial court to vacate its May 9, 2016, order granting Worthington's motion to supplement the record on appeal. (Supreme Court no. 1150872.) In that petition, Travelers argued that Worthington should not be allowed to supplement the record on appeal pursuant to Rule 10(f), Ala. R. App. P., because she did not file a transcript-purchase-order form pursuant to Rule 10(b), Ala. R. App. P. Travelers did not argue in its petition that the trial court erroneously granted the motion to supplement because the trial transcript had not been submitted as evidence during the proceedings on the postjudgment motion. This Court initially ordered answer and briefs. However, on February 2, 2017, this Court denied Travelers' petition without an opinion.

Lambert v. State Farm Mut. Auto. Ins. Co., 576 So.2d 160 (Ala. 1991).